FRANK ROBBINS, ADMINISTRATOR, APPELLANT, v. CITY OF OMAHA, APPELLEE.

FILED DECEMBER 9, 1916. No. 19632.

**Municipal Corporations: ACTION FOR INJURIES: PETITION.** The substance of the petition is set out in the opinion, and *held* that the demurrer of the defendant thereto was properly sustained.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*John O. Yeiser,* for appellant.

*John A. Rine, W. C. Lambert* and *L. J. TePoel, contra.*

MORRISSEY, C. J.

Plaintiff, as administrator of the estate of Francis D. Robbins, deceased, filed his petition in the district court for Douglas county, which, omitting the formal parts, alleged: That the city of Omaha is a metropolitan city having a population of more than 100,000; that it has no park commissioners, nor any special parks reserved by the state under any special acts of the legislature, but that

all streets, parks and public property are under the supervision of a paid body of men officially called "City Commissioners;" that it is the duty of these commissioners to administer the parks for the use of the city, with regard to the health, life and safety of the citizens of the city; "that said city of Omaha owns a large tract of land, a part of which is known as Elmwood Park, and is improved, and a part of said land is undeveloped for park purposes; that upon a part of the undeveloped portion is a pond artificially constructed, and maintained for profit, in that it operated an hydraulic ram to flush water for toilets and the private use of employees of the city in the park department, and maintained to save corporate expense of constructing water mains; that said pond was not maintained for bathing or for the use of the public in either health or enjoyment, but was withheld from use for bathing or fishing; that said pond was fed by springs of cold water, rendering it unfit for bathers and dangerously inducing cramps; that said pond was over six feet deep, and was negligently maintained at that depth and over by maintaining said dam * * * and by a failure to fill deeper portions; that said city negligently suffered and permitted a raft to be maintained upon said lake for over two weeks before the injury complained of, and negligently permitted and suffered many children to use said raft and pond, knowing of its danger, and never inclosed the said pond; that said deep, cold pond of artificial construction, with said raft, was maintained in an obscure part of said land, without any protection against accidents of children, and without any life-saving devices or means of calling for rescue, as an attractive nuisance, and for no public good, and, further, as a dangerous enticement to children; that said Francis D. Robbins came into said park and went upon said raft on the 20th day of July, 1915, and the caretaker of said city saw said child upon said raft and in a dangerous position, and negligently permitted him to remain in said place of danger, and, while so playing in the dangerous

place and situation, fell from said raft into the deep water of said pond at a place of five or six feet deep, causing said Francis D. Robbins to drown." It is further alleged that the deceased was a bright, healthy and intelligent boy, nine years of age, and there is the usual allegation that, by reason of his death, his parents have suffered damages; and there is a prayer for judgment.

To this petition the defendant city demurred, "for the reason that said petition does not state facts sufficient to constitute a cause of action against the defendant." The demurrer was sustained; plaintiff elected to stand on his petition; the cause of action was dismissed, and plaintiff has appealed.

The city claims that, in maintaining this park and pool, it was engaged in a purely governmental service, and that no liability could attach; but we do not deem it essential to a decision of this case to determine that point. The petition alleges that this artificial pond was in a remote part of the park, was out of the usual route of travel, and that it was maintained for profit. But it appears from subsequent allegations of the petition that it was used merely to operate a hydraulic ram to flush water for toilets for the convenience of the employees engaged in the park department. It is clear that it was not maintained for commercial purposes.

It is argued that, because the pond was 6 feet deep, was unguarded, had a raft thereon, and a child might fall therein and be drowned, it is a nuisance, while it is admitted that a shallow body of water which a child might wade across would not be a nuisance. We do not care to fix the depth at which water may be maintained in lakes formed and maintained in public parks. If this is to be done, it ought to be done by legislative enactment. It is a question that falls naturally to the legislative department of the government, and not to the judicial. A lake in a park, whether artificially formed or not, is not of itself a nuisance. Parks are maintained for the benefit of the public, and a pond or lake adds to the beauty of

the park and increases its attractiveness. Although this is an artificial body of water, it did not differ in its essential qualities from a natural body of water. The accident which occurred was one that might happen upon a lake formed by nature or upon a river front. This artificial lake, even with the raft thereon, was no more dangerous than the Missouri river front, where boys of all ages congregate. It is common knowledge that boys, even of tender years, indulge in athletic sports. They play upon rafts, boats and floating logs, climb trees, and expose themselves to innumerable dangers. It is part of a boy's nature to indulge in these venturesome sports, and a city can be no more held for negligence in maintaining this artificial pond, unfenced and unguarded, with the raft thereon, than it could for leaving the river front exposed. The possibility of a child being drowned in this pond was as patent to the parents as to the city. The path of the child is always beset with danger, and this pond is one of those dangers to which childhood has ever been exposed. From the facts stated in the petition, it does not appear that the pond and raft constituted an attractive nuisance. The demurrer was properly sustained, and the judgment is

AFFIRMED.

FAWCETT, J., not sitting.

ROSE, J., dissenting.

In my opinion the only ground on which the city can legally escape liability for damages under the facts stated by plaintiff is that it performed a governmental function in maintaining the park. I therefore dissent from the ruling that, without regard to the capacity in which the city exercised its powers, actionable negligence is not pleaded. The child was not a trespasser, but was in the park by invitation, express or implied. If the city is a property owner answerable for negligence, it is governed by the following rule of law:

"The owner or occupier of real property is under the duty of exercising reasonable or ordinary care and pru-

dence to the end of keeping his premises safe for the benefit of those who come upon them by his invitation, express or implied; and if, through a neglect of this duty, they are, without negligence or fault of their own, injured by reason of any negligent defect therein, he must pay damages." 1 Thompson, Negligence, sec. 968. *Tucker v. Draper*, 62 Neb. 66.

A child on the premises by invitation is not a trespasser, and it is unnecessary in such a case to show that the pond was an attractive nuisance. *City of Omaha v. Richards*, 49 Neb. 244.

If a city in establishing and maintaining parks does not act in a governmental capacity relieving it from liability for negligence, it is answerable according to the following doctrine:

"The maintenance of a public park in a populous city is not only an implied but an express invitation to the public to resort to it for amusement and recreation, and, where children of tender years and immature minds are invited to play and amuse themselves, the parents have a right to rely on the city to exercise reasonable or ordinary care to keep the park and water-works system safe for the benefit of those who come there by such express invitation."

"The city owed to adults and children alike the duty of exercising ordinary care to avoid injuring them anywhere within the boundaries of the public park, and it cannot escape liability for the death of this child by drawing a distinction between the duties the city owed to the invitees at different points or portions of the park. The view we take of the case is that the city owed to this child and its parents the duty to exercise ordinary care to avoid injuring him, no matter on which portion of the park the child might resort to for play." *City of Anadarko v. Swain*, 42 Okla. 741.

Unless the city was performing a governmental function in maintaining the park, the petition states a cause of action.