CALOGERO RALLO and ROSALIE RALLO, Appellants, v. HEMAN CONSTRUCTION COMPANY and QUARRY REALTY COMPANY.

**In Banc, December 30, 1921.**

1. **NEGLIGENCE: Unfenced Pond: Drowning of Child.** The owner of an unfenced private pond, situated 150 feet from a public street in a populous part of a city, in which children had frequently swum and played and fished, without interference or posted warnings, is not liable in damages to the parents of an eight-year-old child, a trespasser, who fell into said pond and was drowned. Although the water in the pond was from seven to fourteen feet, and its banks were precipitous and thirty feet high at the point where the child fell in, and it was unfenced and ungarded and the owner knew that children frequented it for purposes of play, swimming and fishing, he was not guilty of negligence in permitting them to visit it or in failing to maintain a fence so constructed as to prevent them from going so close to the bank as to endanger their lives. The private owner of private property, situate away from a public highway, is under no legal obligation to fence or guard every dangerous hole or pond thereon for the protection of persons who have no right to go upon the land.

2. ———: ———: ———: **Turn-Table Doctrine: Invitation to Children.** The doctrine of the turn-table cases will not be extended to a pond, situated on private property, away from a public highway, in the populous part of a great city, in which children frequently swim, fish and play.

Appeal from St. Louis City Circuit Court.—*Hon. Frank-lin Ferriss*, Judge.

AFFIRMED.

*Charles A. Lich* for appellants.

(1)   It was the duty of the defendants to keep the premises in question in safe condition so as to prevent injury to children, in view of the fact that the premises were dangerous to children and likely to attract them. Schmidt v. Distilling Co., 90 Mo. 284.   (2)   It was the duty of the defendants to keep the premises safely fenced to prevent children from entering, and if a fence proved ineffective either as a barrier or a warning, it was the duty of the company to expel the intruders or adopt other measures to avoid accident.   Capp v. City, 251 Mo. 367; Price v. Water Co., 58 Kan. 551; Jenson v. Kansas City, 181 Mo. App. 359.   (3)   One who owns land in a populous neighborhood is bound to use reasonable care not to leave exposed on his premises any dangerous agency attractive to children.   Fink v. Mo. Furnace Co., 82 Mo. 276; Morrison v. Phelps Stone Co., 219 S. W. 393.

*Rodgers & Koerner* for respondents.

(1)   Ordinarily one owning or controlling property is under no duty to a trespasser to guard a dangerous place or thing thereon.   Overholt v. Vieths, 93 Mo. 422; Moran v. Pullman Car Co., 134 Mo. 641; Arnold v. St. Louis, 152 Mo. 173; Kelly v. Benas, 217 Mo. 1; Buddy v. Railroad, 276 Mo. 276; State v. Ellison, 220 S. W. 497.   (2)   The doctrine of the turn-table case is an exception to this rule.   (3)   A quarry pond distant from a public highway is not within this exception.   Overholt v. Vieths, 93 Mo. 422.   (4)   The attitude of this court is to restrict, not to extend, said doctrine.   Cases cited above.

DAVID E. BLAIR, J.—The action is in tort for wrongful death. Appellants were non-suited below and having unsuccessfully moved to set same aside, have appealed.

Appellants are the parents of Pietro Rallo, a boy eight years of age. On October 8, 1918, he fell into a pond of water formed in an abandoned rock quarry on land owned by respondent Quarry Realty Company, and was drowned. Said realty company used said pond as a dumping place and kept an attendant in charge. Respondent Heman Construction Company rented a part of said premises and used the same for storing construction materials, and had no control over the pond in question. The pond was situated upon a half block of ground on the north side of Ashland Avenue in the city of St. Louis. An alley extended east and west through the block. The pond was situated on the north portion of the tract. The water in the pond varied from seven to fourteen feet in depth. The pond was not fenced or guarded in any manner. An open driveway extended from Ashland Avenue to the banks of said pond. Said banks were precipitous and were about thirty feet high where the appellant's son fell into the pond.

Children frequented the premises and fished and swam in the pond and rafted on the debris floating thereon. This was done with the knowledge of the Quarry Realty Company's attendant and without interference by him or said company. No warning signs were posted at the pond. The pond was located about 150 feet from Ashland Avenue.

In the amended petition upon which the case was tried it was alleged that defendants were careless and negligent in permitting the deceased and other children to play on the banks of such pond and in failing to erect and maintain around said pond, located in a populous part of the city, a fence so constructed as to prevent small children from going so close to the edge of the bank as to endanger their lives. The prayer of said petition for damages in the sum of $10,000 fixed the appellate jurisdiction of this court.

In Overholt v. Vieths, 93 Mo. 422, the facts were very similar to those in the case at bar. The appellant was the mother of an eight-year-old boy who was drowned in a pond of water formed in a rock quarry on a lot owned by the defendant in the city of St. Louis. The banks of the pond were steep and precipitous and were not protected by a fence.

Plaintiff's case was submitted to a jury and the verdict was for her and the damages were assessed at the sum of $10. She appealed because of the inadequacy of the damages allowed and because of other alleged errors not of consequence here. Defendant did not appeal. The judgment of the trial court was affirmed. NORTON, C. J., wrote the opinion in that case, and reviewed many cases wherein recovery under quite similar facts had been denied, and concluded his opinion by saying:

"Under this view of the case, plaintiffs cannot be heard to complain that they only obtained a verdict for ten dollars damages, inasmuch as the facts, in evidence, would have justified the court in directing a verdict for the defendant. But, as defendant has not appealed, the judgment will be affirmed, with the concurrence of the other judges."

Judge NORTON quoted approvingly the general rule as laid down in Sherman & Redfield on Negligence, p. 598, sec. 505, as follows:

" 'The occupant of land is under no obligations to strangers to place guards around excavations made by him, unless such excavations are so near a public way as to be dangerous, under ordinary circumstances, to persons passing upon the way, and using ordinary care to keep upon the proper path; in which case he must take reasonable precautions to prevent injuries happening therefrom to such persons.' The same rule is announced in 1 Thom. on Neg., p. 303, sec. 3; Klix v. Nieman, 32 N. W. (Wis.) 223; Gillispie v. McGowan, 100 Pa. St. 144; Galligan v. Mfg. Co., 3 New Eng. Rep. 705; Straub v. Soderer, 53 Mo. 38.

Rallo v. Heman Construction Co.

"While the authorities above cited recognize the liability of the owner, if a child is injured by dangerous machinery, so situated and exposed that it will naturally attract children, who cannot be expected to comprehend the danger of its use, and takes no precaution to prevent access to it, and thereby impliedly invites children to it, they distinctly deny the liability of a lot owner under the facts disclosed in this case."

Judge NORTON also quoted approvingly from Klix v. Nieman, 32 N. W. (Wis.) 223, as follows:

" 'It will be observed that it is not alleged that the pond was so near the highway as to make it unsafe for passengers going along the street or sidewalk, and no averment that the boy, when he fell into the pond, was passing along the street or sidewalk. On the contrary, it is stated that the boy was playing upon and around the pond when he was precipitated into the water and drowned. So the single question presented is, was it the duty of the defendant to fence or guard this hole, or excavation, on his lot (which it does not appear he made, or caused to be made), when surface water collected, in order to secure the safety of strangers, young or old, who might go upon or about the pond for play or curiosity? If the defendant was bound to so fence or guard the pond, upon what principle, or ground, does this obligation rest? There can be no liability unless it was his duty to fence the pond. It surely is not the duty of an owner to guard, or fence, every dangerous hole, or pond, or stream of water on his premises for the protection of persons going upon his land who had no right to go there. No such rule of law is laid down in the books, and it would be most unreasonable to so hold.' The judgment of the circuit court, sustaining the demurrer, was affirmed."

In the Klix Case a nine-year-old boy was drowned in a pond in an abandoned excavation filled with water on a tract of ground in a populous city and owned by a private person. The pond was not guarded by a fence or otherwise.

Overholt v. Vieths, supra, has never been overruled. On the contrary the rule therein announced has been repeatedly approved in more recent cases. [Barney v. Railroad Co., 126 Mo. 1. c. 390; Witte v. Stifel, 126 Mo. 295; Moran v. Pullman Co., 134 Mo. 1. c. 651; Butz v. Cavanaugh, 137 Mo. 1. c. 511; Arnold v. St. Louis, 152 Mo. 1. c. 183; Hight v. Bakery Co:, 168 Mo. App. 1. c. 452; Kelly v. Benas, 217 Mo. 1; State ex rel. v. Ellison, 281 Mo. 1. c. 681.]

Appellants rely on the doctrine of the turn-table cases. To hold defendants liable in this case would require us to extend this doctrine and we have consistently refused to do this in this very sort of cases. [See State ex rel. v. Ellison, supra; O'Hara v. Gas Light Co., 244 Mo. 1. c. 405; Moran v. Pullman Co., supra.] To the same effect is Hight v. Bakery Co., 168 Mo. App. 452.

Appellants reply on Capp v. St. Louis, 251 Mo. 345. That case can be distinguished from the case at bar by the fact that the pool in which the boy was drowned was in a public park in the great city of St. Louis, where said boy had a legal right to be. The writer of that opinion cites cases where recovery of damages was permitted because of the maintenance of dangerous conditions on private premises not adjacent to public highways and not dangerous to ordinary travel thereover, and by *a fortiori* reasoning employed such cases as persuasive authority for the conclusion reached in the Capp Case. That case cannot be said to be a ruling by this court extending the doctrine of the turn-table cases to dangerous conditions on private property, nor can it be said to have overruled Overholt v. Vieths, supra.

The case of Schmidt v. Distilling Co., 90 Mo. 284, is relied on by appellants. In that case a recovery of damages was permitted by this court for the death of a three-year-old child caused by her falling into a pool of hot water on private premises and situated at a distance from a public highway. In Barney v. Railway Co., supra, this court refused to follow the Schmidt Case, and in effect, if not in express terms, overruled it.

The rule laid down in the Overholt Case is still the law in this State. That rule precludes a recovery by appellants, and results in the conclusion that the order of the trial court refusing to set aside its nonsuit was proper, and therefore in the affirmance of the judgment below.

All concur, except *Higbee, J.*, who dissents.