[Civ. No. 4885.  First Appellate District, Division Two.—June 28, 1924.]

## C. W. REARDON, Appellant, v. SPRING VALLEY WATER COMPANY (a Corporation), Respondent.

[1] NEGLIGENCE — NUISANCES ATTRACTIVE TO CHILDREN — ARTIFICIAL RESERVOIR.—The doctrine of the "turntable" cases cannot be extended to cover the case of a child of tender years drowned while playing in a rowboat left floating, unsecured by any means, along the side of a platform or wharf connected with a large, artificial, unguarded reservoir owned and maintained by the defendant in the residential neighborhood of a city where children of tender years are accustomed to play.

(1) 29 Cyc., p. 464.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  Walter C. Herzinger, Judge Presiding.  Affirmed.

The facts are stated in the opinion of the court.

Edwin V. McKenzie for Appellant.

H. S. Young and B. F. Rabinowitz for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against him entered after a demurrer had been sustained to his complaint, without leave to amend. The complaint alleged that on March 8, 1923, the defendant Spring Valley Water Company owned and maintained a large and deep body of water contained in a large artificial reservoir in the immediate vicinity of Holly Park, in the city and county of San Francisco, California; that the said reservoir and the sides and embankments thereof were at all of said times visible to passers-by in the street immediately surrounding same and said reservoir is located in a residen-

1. Doctrine of attractive nuisance and its applicability as to ponds, reservoirs, etc., notes, 7 Ann. Cas. 200; 11 Ann. Cas. 990; Ann. Cas. 1913A, 1032; 19 L. R. A. (N. S.) 1143; 47 L. R. A. (N. S.) 1101. See, also, 19 Cal. Jur. 631; 20 R. C. L. 96.

tial neighborhood; that many hundreds of children reside in said neighborhood; that this reservoir was immediately surrounded by public streets and highways, contiguous and adjacent thereto where children of tender years were accustomed to resort for play; that said reservoir and grounds were partly protected by a fence, but that said fence was inadequate to prevent children from entering said reservoir grounds because said fence was dilapidated and contained many large holes and openings of sufficient size to permit ingress to and egress from said grounds of said children; that at said times defendant maintained on this reservoir a small rowboat which floated upon the water along the side of a platform or wharf and was unsecured by any means; that said reservoir, grounds, landing and boat so floating on the water constituted an attraction of extreme danger to children of tender years; that at all of said times many children of tender years, not knowing or realizing the danger, made use of said holes and openings in the fence, entered the grounds and played in, on, and about said rowboat; that the defendant well knew all of these facts, but nevertheless failed to protect or guard its grounds by a watchman or by any other means; that the defendant, in disregard of its duty, carelessly, negligently, willfully, and wantonly permitted said reservoir and grounds to remain unguarded and said attractive rowboat to remain unsecured and unprotected; that on said eighth day of March, 1923, the minor son of plaintiff of the age of five years, by reason of said negligent acts and omissions of defendant, entered said grounds through a large hole and opening in the defective fence and being attracted to said unsecured boat, boarded it, floated out on said water, and fell from said boat and was drowned.

A demurrer was sustained to the complaint and judgment entered for the defendant.

[1] Appellant opens his argument by stating that the general rule is that the owner of real property owes no duty of ordinary care to a trespasser, but that a well-grounded exception to this rule exists in the doctrine relating to nuisances attractive to young children. This statement is concurred in by the respondent, which admits that the doctrine of the "turntable" cases has been adopted and consistently followed by the courts of this state. It is further agreed

between the parties to this appeal that there is a conflict among the decisions of the courts of the different states in this country upon the question of how far this doctrine shall be extended and as to the nature of the cases which should come within its proper scope.

Appellant maintains that the California cases do not restrict the doctrine of the "turntable" cases to accidents arising out of dangerous machinery. In the case of *Barrett* v. *Southern Pac. Co.*, 91 Cal. 296 [25 Am. St. Rep. 186, 27 Pac. 666], the court speaks of the doctrine as applying to "dangerous and attractive machinery." In the case of *Cahill* v. *Stone & Co.*, 153 Cal. 571 [19 L. R. A. (N. S.) 1094, 96 Pac. 84], it was held that the rule of the "turntable" cases was not confined to turntables, "but applies to any attractive and dangerous machinery so placed." In the case of *Peters* v. *Bowman*, 115 Cal. 345 [56 Am. St. Rep. 106, 47 Pac. 113], the court refused to extend the rule of the "turntable" cases to death by drowning, declaring that "the cases to which the rule has been applied so far as our attention has been called to them are nearly all cases where the owner of land had erected on it 'dangerous machinery.'" *Loftus* v. *Dehail*, 133 Cal. 214 [65 Pac. 379], refused to extend the "turntable" doctrine beyond the limits defined in *Peters* v. *Bowman, supra*. *George* v. *Los Angeles Ry. Co.*, 126 Cal. 357 [77 Am. St. Rep. 184, 46 L. R. A. 829, 58 Pac. 819], limits the doctrine to injuries caused by "dangerous machinery." Other cases have extended the rule somewhat. (*Pierce* v. *United Gas & Electric Co.*, 161 Cal. 176 [118 Pac. 700] ; *Faylor* v. *Great Eastern etc. Min. Co.*, 45 Cal. App. 194 [187 Pac. 101].) However, it may be conceded that recovery may be had in cases where accidents occur to young children through attractive nuisances which are not, technically, "dangerous machinery," without aiding the appellant in the least in the instant case. Able counsel, upon both sides, have so clearly and exhaustively briefed this case that it is a temptation to discuss the abundance of material upon the subject which they have presented to us. It would seem idle, however, to indulge in a historical treatment of the doctrine involved and its ramifications in the various jurisdictions, or to enter into a discussion of the various situations embraced within the operation of the rule, because there has been, in this state, an express and

definite exclusion from the operation of the rule of the case where a child of tender years meets death by drowning in a natural or artificial body of water upon unfenced and unguarded private property; and we are bound by the limitations of the rule in our own state, clearly stated in two cases precisely in point: *Peters* v. *Bowman*, 115 Cal. 345 [56 Am. St. Rep. 106, 47 Pac. 113], and *Polk* v. *Laurel Hill Cemetery Assn.*, 37 Cal. App. 624 [174 Pac. 414].

In the case of *Peters* v. *Bowman, supra*, an artificial pond existed on defendant's land; children played upon it and the defendant had knowledge of these facts. The decedent, a boy of eleven years, had frequently played on the pond and on the particular occasion constructed a raft from which he fell into the water and was drowned. The court said: "It is not contended by appellant that the rule of the turntable cases has ever been applied to facts like those in the case at bar; his contention is that the reasoning and philosophy of the rule *ought* to extend it to a case like the one at bar. But the same reasoning does not apply to both sets of cases. A body of water—either standing as in ponds and lakes, or running as in rivers and creeks, or ebbing and flowing, as on the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowledge of which is common to all; and there is no just view, consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with an impenetrable wall. However, general reasoning on the subject is unnecessary because adjudicated cases have determined the question adversely to appellant's contention. No case has been cited where damages have been successfully recovered for the death of a child drowned in a pond on private premises, who had gone there without invitation; while it has been repeatedly held that in such a case no damages can be recovered."

On the direct authority of the case from which the foregoing quotation is taken, the court, in the case of *Polk* v. *Laurel Hill Cemetery Assn., supra*, which likewise involved a death by drowning in an artificial pond on private property, declared that there was no liability, using the follow-

ing language, which is pertinent here: "A pond of water, it may be conceded, is always attractive to youngsters, but the dangers connected with and inherent in a lake or pond of water, natural or artificial, are obvious to everybody—even to a child old enough to be permitted by its parents to go about and play unattended upon the streets or in the public parks. It would not conform to the dictates of common reason to say that a child of the age of eight years, or even much younger, does not know and fully realize that a fall into a pond of water or a deep reservoir would result in injury to him, if not in his death. But there is no necessity for abstract reasoning upon the proposition, for we think it thoroughly settled by the decisions that a pond of water, whether natural or artificial, is not to be included in the same class with turntables and other complicated machinery the inherent dangers of which are not obvious to a child."

The strongest case in his favor cited by appellant is the case of *City of Pekin* v. *McMahon,* 154 Ill. 141 [45 Am. St. Rep. 114, 27 L. R. A. 206, 39 N. E. 484]. This case seems to be squarely opposed to the rule in this state, expressed in the cases cited in this opinion. Not only is it without value here as a precedent for that reason, but it has been called to the attention of our supreme court and rejected as contrary to the view of that tribunal. In the opinion denying a rehearing in the case of *Peters* v. *Bowman, supra,* it was said, referring to the case of *Pekin* v. *McMahon, supra:* "I can only say that the reasoning of the opinion in that case has failed to convince me and that the decision stands alone and without other support than may be found in the turntable cases from which the supreme court of Illinois was unable to distinguish it. I think, however, that there is a distinction which relieves us of the necessity of extending an exceptionally harsh rule of liability to such a case."

Therefore, in the light of the precedents binding upon this court, there is only one possible theory upon which appellant can recover and that is that the single additional feature of an unsecured floating boat entirely removes the case from the application of the settled rule in California. To take respondent's striking presentation of the matter: If a child of the age of appellant's son, while trespassing on pri-

vate property, is attracted to an artificial pond and falls in and drowns, there is no liability; if the same child, attracted to the same pond for the purpose of fishing, loses his balance and falls into the water and is drowned, there is no liability; if the child, while swimming in the pond, is drowned, there is no liability; if he constructs a raft and uses it upon said pond and falls from it and is drowned, there is no liability under the authority of the California cases cited therein. Can it be that if he falls from a rowboat left upon the water by the owner of the property and is drowned a different legal principle is involved? We think there is no reason for a different rule in the instance last mentioned, and an examination of the following authorities will indicate that there is no change in the principle to be applied because a child was drowned after falling from a floating object placed in the water by the owner of the property: *Blum* v. *Weatherford,* 121 La. 298 [46 South. 317]; *Rallo* v. *Heman Construction Co.,* 291 Mo. 221 [236 S. W. 632]; *Richards* v. *Connell,* 45 Neb. 467 [63 N. W. 915]; *Bowman* v. *Omaha,* 52 Neb. 293 [66 Am. St. Rep. 506, 40 L. R. A. 531, 72 N. W. 316]; *Cooper* v. *Overton,* 102 Tenn. 211 [73 Am. St. Rep. 864, 45 L. R. A. 591, 52 S. W. 183]; *Barnhart* v. *Chicago etc. R. R. Co.,* 89 Wash. 304 [L. R. A. 1916D, 443, 154 Pac. 441]; *Smith* v. *McGoldrick Lumber Co.,* 124 Wash. 363 [214 Pac. 819]; *Robbins* v. *City of Omaha,* 100 Neb. 439 [160 N. W. 749].

The cases last cited involved situations where young children fell from rafts or logs into an unfenced body of water upon private property.

We think that upon neither reason nor authority can the instant case be differentiated in principle from the cases of *Peters* v. *Bowman, supra,* and *Polk* v. *Laurel Hill Cemetery Assn., supra.*

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1924.