216 P.2d 944

**BASS v. QUINN–ROBBINS CO., Inc.**

**No. 7614.**

Supreme Court of Idaho.

April 6, 1950.

Ariel L. Crowley, Boise, for appellant.

J. F. Martin, Boise, for respondent.

TAYLOR, Justice.

The plaintiff brought this action under section 5-310, I.C., for the death of his son, Gary Lee Bass, age 9. Demurrer to the complaint was sustained without leave to amend. It is alleged that the defendant was the owner of and in possession of a tract of land located in a densely populated area adjoining the westerly boundary line of the city of Boise and lying between such boundary line and the shore of the Boise River. On a portion of the land, in close proximity to the Boise River, the defendant had at sometime in the past constructed and operated a gravel processing plant, and in connection with the use of the plant had excavated a deep pit, and had cut a channel, constituting an inlet from the river to the excavation, in such manner that the pit became filled with water. The inlet is located upon a publicly owned beach of the Boise River frequented by hundreds of children for play and bathing purposes. The processing of gravel at that site had been discontinued long since and the plant removed. The excavated area, being unused, had grown up with weeds about the shores of the pit and along the inlet. The pond had a deceptive appearance of being shallow, was accessible without barrier or obstruction by trails through the weeded area across an adjoining air field and across the lands of the defendant, and plainly visible. That the defendant "maintained and allowed to exist upon the said premises, open, easy of access and un–

barred by protective fences, gates or other devices, and approached by trails of a nature such as to appeal to the adventuresome spirit of small boys, and apparently innocuous, but actually deadly place, towit, the water filled, weedgrown pit and waterway aforesaid, alluring, attractive and inviting to small boys, neither needed by nor used by the defendant in the current conduct of its business. And upon the said pit, the defendant, having full knowledge of the attractive character of the said deadly, dangerous and alluring place created by it, the defendant placed, or suffered to be and remain floating, a makeshift raft, composed of a disconnected section of a plank fence formerly used by the defendant at another part of its said lands, constituting an irresistable attraction to small boys." That Gary Lee, in company with other children, was enticed, attracted and impliedly invited upon defendant's property and into the waters of the pit, where he was drowned. Plaintiff then sets out nine specific particulars in which it is alleged defendant was negligent, which may be condensed as follows: (1) In maintaining the conditions described. (2) Permitting the pit to remain filled with water without attempting to shut off or close the inlet from the river. (3) Failing to erect fences or barriers. (4) Failing to erect warning signs. (5) Impliedly inviting deceased upon the premises. (6) Failing to warn the child by caretaker. (7) Failing to keep the premises clear of undergrowth. (8) Suffering open, well travelled paths to exist leading toward the pit. (9) Failing to recognize the proximity of the pit to the shore of the river frequented by children.

With respect to these facts, it will be assumed, as a matter of common knowledge, that a pit or excavation in a gravel formation in close proximity to a river will fill with water by seepage, to or near the level of the river water. Hence the existence of the inlet or the failure to close it would not constitute negligence. It is also to be noted that the plaintiff does not charge negligence in the failure of the defendant to fill the pit or level the area. In this connection it may be fairly assumed that the removal of large quantities of gravel below the level of an adjacent stream would ordinarily leave an excavation which could not be filled without burdensome expense.

The "attractive nuisance" doctrine had its origin in the "turntable cases," and emanated from the Supreme Court of the United States, in Sioux City and Pacific R. R. v. Stout, 17 Wall. 657, 21 L.Ed. 745; 43 L.R.A. 148. It was adopted by this court in York v. Pacific & Northern Ry. Co., 8 Idaho 574, 69 P. 1042. Many jurisdictions refuse to recognize the doctrine, 36 A.L.R. 67-109.

General propositions supported by a great majority of the mass of decisions from those jurisdictions where the doctrine is accepted may be stated as follows:

To render the owner liable the structure or condition maintained or permitted on his property, must be peculiarly or unusually attractive to children; the injured child must have been attracted by such condition or structure; the owner must know, or the facts be such as to charge him with knowledge, of the condition, and that children are likely to trespass and be injured; the structure or condition must be dangerous and of such a character that the danger is not apparent to immature minds. Decisions and annotations, 36 A.L.R. 1-294; 45 A.L.R. 973-993; 53 A.L.R. 1328-1356; 60 A.L.R. 1427-1455; 8 A.L.R.2d 1231-1392; 45 C.J. 763-767; and other authorities cited in this opinion.

A pool or pond is not an "attractive nuisance," such as to render the owner liable for the drowning of a child, where the dangers inherent in it are open and apparent, and there is no hidden, concealed or unusual danger or trap. Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882; Thomas v. Pocatello P. & I. Co., 7 Idaho 435, 63 P. 595; Cox v. Alabama Water Co., 216 Ala. 35, 112 So. 352, 53 A.L.R. 1336; Kansas City v. Siese, 71 Kan. 283, 80 P. 626; Cicero State Bank v. Dolese & Shepard Co., 298 Ill.App. 290, 18 N.E.2d 574; Saxton v. Plum Orchards, La.App., 34 So.2d 423; Barnhart v. Chicago M. & St. P. Ry., 89 Wash. 304, 154 P. 441, L.R.A.1916D, 443; Smith v. McGolderick Lbr. Co., 124 Wash. 363, 214 P. 819; Polk v. Laurel Hill Cemetery Ass'n, 37 Cal.App. 624, 174 P. 414; Reardon v. Spring Valley Water Co., 68 Cal.App. 13, 228 P. 406; Beeson v. City of Los Angeles, 115 Cal.App. 122, 300 P. 993; Melendez v. City of Los Angeles, 8 Cal.2d 741, 68 P.2d 971; King v. Simons Brick Co., 52 Cal.App.2d 586, 126 P.2d 627; Demmer v. City of Eureka, 78 Cal.App.2d 708, 178 P.2d 472; and 60 A.L.R. 1453-1455; 8 A.L.R.2d 1254-1392.

"The character of the danger, as open and obvious, or hidden and latent, is an important consideration. The doctrine of attractive nuisance, it has been said, is limited in its application to cases where the danger is latent, and affords no basis for a recovery where the injury complained of was produced by a peril of an obvious or patent character. A danger which is not only obvious but natural, considering the instrumentality from which it arises, is not within the meaning of the attractive nuisance doctrine, for the reason that the owner or occupant is entitled to assume that the parents or guardians of a child will have warned him to avoid such a peril. Pits and excavations on land embody no dangers that are not readily apparent to everyone, even very young children. For this reason, the proprietor is under no obligation, as a rule, to fence or otherwise guard such places, and he will not be liable for injuries to children who may have fallen therein." 38 Am.Jur. 818.

"The weight of authority is to the effect that the attractive-nuisance doctrine

does not apply to ponds,—at least, where there is no unusual danger." 36 A.L.R. 224-237 at 224.

"It has been considered that the attractive nuisance doctrine applies only where the danger is latent, and not when it is patent, for the reason that the inefficiency of children who are so little advanced as to be unable to recognize patent dangers should not be allowed to shift the care of them from their parents to strangers or to impose upon the owners of property a duty and liability where otherwise none would exist." 45 C.J. 765.

"The weight of authority is to the effect that ponds, pools, lakes, streams, reservoirs, and other waters do not constitute attractive nuisances, at least in the absence of any unusual element of danger. The natural and ordinary perils thereof are usually deemed to be obvious to children of the tenderest years, and as a general proposition no liability attaches to the proprietor by reason of injury or death resulting therefrom to children who have come upon the land to bathe, skate, or play." 56 Am.Jur. 850.

"A body of water—either standing, as in ponds and lakes; or running, as in rivers and creeks; or ebbing and flowing, as on the shores of seas and bays—is a natural object, incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowl-edge of which is common to all; and there is no just view, consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with an impenetrable wall." Peters v. Bowman, 115 Cal. 345, 47 P. 113 at page 114, 598, 56 Am.St.Rep. 106.

"To compel the owners of such property either to inclose it or to fill up their ponds and level the surface, so that trespassers may not be injured, would be an oppressive rule. The law does not require us to enforce any such principle, even where the trespassers are children. We all know that boys of eight years of age indulge in athletic sports. They fish, shoot, swim, and climb trees. All of these amusements are attended with danger, and accidents frequently occur. It is part of the boy's nature to trespass, especially where there is tempting fruit; yet I have never heard that it was the duty of the owner of a tree to cut it down because a boy trespasser might possibly fall from its branches. Yet the principle contended for by the plaintiff would bring us to this absurdity, if carried to its logical conclusion. Moreover, it would charge the duty of the protection of children upon every member of the community except their parents." Gillespie v. McGowan, 100 Pa. 144, 45 Am.Rep. 365.

This court refused to extend the doctrine to a log covered mill pond, saying: "High explosives may be locked up beyond the reach of children, turntables and other dan-

gerous machinery may be so secured that children cannot injure themselves thereby, but this is not true of ponds, lakes, streams, and many other properties which are the subjects of private ownership and which may cause the injury or death of children who play about them. The doctrine of attractive nuisance should not be extended so as to hold liable the owner of such property when he has used it only as a reasonably prudent person would do under like circumstances for, by so using it, he is not guilty of actionable negligence." Bicandi v. Boise Payette Lumber Co., 55 Idaho 543, 44 P.2d 1103, 1105.

The source of the doctrine, the Supreme Court, refused to apply it in a case where two children died in an unfenced pool, apparently clear and pure, but containing poison, located 100 to 120 feet from a highway, on the ground that it was not shown that it was the pool which led them to enter the land. The court said: "Infants have no greater right to go upon other people's land than adults, and the mere fact that they are infants imposes no duty upon landowners to expect them and to prepare for their safety. On the other hand the duty of one who invites another upon his land not to lead him into a trap is well settled, and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult. But the principle if accepted must be very cautiously applied. * * * There can be no general duty on the part of a land-owner to keep his land safe for children, or even free from hidden dangers, if he has not directly or by implication invited or licensed them to come there." United Zinc and Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28, 31.

The fact that a raft or other object floats on the pond does not change the rule. (Except where the float may conceal an otherwise apparent risk.) Reardon v. Spring Valley Water Co., 68 Cal.App. 13, 228 P. 406; Rallo v. Herman Const. Co., 291 Mo. 221, 236 S.W. 632; Richards v. Connell, 45 Neb. 467, 63 N.W. 915; City of Omaha v. Bowman, 52 Neb. 293, 72 N.W. 316, 40 L.R.A. 531, 66 Am.St.Rep. 506; Robbins v. Omaha, 100 Neb. 439, 160 N.W. 749; Fiel v. City of Racine, 203 Wis. 149, 233 N.W. 611; Harriman v. Incorporated Town of Afton, 225 Iowa 659, 281 N.W. 183; Peters v. Town of Ruston, La.App., 167 So. 491; McKenna v. City of Shreveport, 16 La.App. 234, 133 So. 524; Sullivan v. Huidekoper, 27 App.D.C. 154, 7 Ann. Cas. 196, 5 L.R.A.,N.S., 263.

The much criticized case of City of Pekin v. McMahon, 154 Ill. 141, 39 N.E. 484, 27 L.R.A. 206, 45 Am.St.Rep. 114, is the authority most often cited by those courts which impose a liability for drowning. Beside the criticism of it, that case

is further weakened by the fact that the court held that the city (owner) was estopped to deny its liability because the excavation and pond was a violation of its own ordinance. Also on its facts it is a stronger case for liability than we have here. Furthermore the supreme court of Illinois itself has refused to follow the broad implications of the McMahon case, in its recent decision in Peers v. Pierre, 336 Ill.App. 134, 83 N.E.2d 20. In that case the owner had, by excavating for sand and gravel, created ponds on his property lying within the village of Skokie. Near the edge of the pond involved was a house occupied by friends of the deceased; there were streets on three sides of the property; it was located in a thickly populated neighborhood; its attractions were visible from the streets and it was resorted to by children as a place of amusement and this was known to the defendant. There was evidence of a warning sign, facing the road leading to the pond, which the decedent, a boy of seven, could not read or understand. The boy had been warned, spanked and kept at home for disobeying the warning; which, incidentally, shows the futility of such warnings. The court held the defendant not liable, and that the attractive nuisance doctrine does not apply to ponds where there is no unusual danger. See also Mindeman v. Sanitary Dist. of Chicago, 317 Ill. 529, 148 N. E. 304, and Wood v. Consumers Co., 334 Ill.App. 530, 79 N.E.2d 826.

In many of the cases cited the water was located in or near a city, village, or thickly populated area. Such location is not generally considered a controlling factor. Here, although it is charged that defendant's land is located in a densely populated area, it also appears to be outside the city limits, adjoining an air field on one side and the river on another, and the immediate area is grown up with weeds. The river is referred to as a public highway, because navigable. But it is a matter of common knowledge that it is not used for travel either by children or adults.

Many of the cases concern premises which were fenced, and illustrate the futility of such barriers. Starling v. Selma Cotton Mills, 168 N.C. 229, 84 S.E. 388, L.R.A.1915D, 850; Price v. Atchison Water Co., 58 Kan. 551, 50 P. 450, 62 Am. St.Rep. 625; Texas Public Service Co. v. Laughead, Tex.Civ.App., 73 S.W.2d 925; Cox v. Alabama Water Co., 216 Ala. 35, 112 So. 352, 53 A.L.R. 1336. In fact, recoveries have been sought for injuries to children attempting to climb over fences and walls. Clark v. Richmond, 83 Va. 355, 5 S.E. 369, 5 Am.St.Rep. 281; Albert v. New York, 75 App.Div. 553, 78 N.Y.S. 355; Coon v. Kentucky & I. T. R. Co., 163 Ky. 223, 173 S.W. 325, L.R.A.1915D, 160; Chicago, K. & W. R. Co. v. Bockoven, 53 Kan. 279, 36 P. 322; Brown v. City of Scranton, 313 Pa. 230, 169 A. 435.

316

 The subject of the liability of landowners for drowning of children is quite exhaustively annotated in 8 A.L.R.2d 1254–1393. This excellent annotation is prefaced by the decision in Banker v. McLaughlin, 146 Tex. 434, 208 S.W.2d 843, 846, 8 A.L.R.2d 1231, which case is also cited by appellant. In that case, however, there are two distinguishing features. (1) The pit was on a subdivision to which the owner invited the public to inspect the lots there for sale. (2) The pit could have been drained or the accumulation of water therein prevented (in the words of the owner) "by maneuvering a few shovels full of dirt." Here the pit could not be drained except, possibly, by the continuous operation of a pump to return the seepage to the river. Even then the trespassing boy might pass by the empty pit and pump, and whatever dangers might there exist, only to be drowned where the water is discharged into the river. There are too many pits, pools, ponds and sloughs, along the rivers and streams of the state to hold that the owners should be expected to fill or drain them, or to maintain watchmen, or to build impenetrable barriers, to keep trespassing children from them. Such accidents are tragic, but fortunately they are not frequent in relation to the number of boys continually exposed to the risk. Reasonable precautions may be expected, such as locking a turntable, but the law does not demand that which is unreasonable or futile.

Judgment affirmed. Costs to respondent.

HOLDEN, C. J., and GIVENS, PORTER and KEETON, JJ., concur.