966 F.2d 1444
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James A. SANDERS, Plaintiff-Appellant,
v.
LAUREL HIGHLANDS RIVER TOURS, INCORPORATED; Laurel
Highlands River Tours of Maryland, Incorporated,
Defendants-Appellees.
 No. 92-1060.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 5, 1992
Decided: June 29, 1992
 
 Argued: Richard Evan Jordan, Washington, D.C., for Appellant.
 Howard J. Schulman, Baltimore, Maryland, for Appellee.
 Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 James A. Sanders appeals the order of the district court granting summary judgment in favor of Laurel Highlands River Tours, Inc. (Laurel) on his claims arising from injuries he received while on a white-water rafting trip. Sanders also appeals the district court's denial of his motion for reconsideration of the judgment. The district court granted summary judgment on the grounds that Laurel had no duty to warn Sanders of the dangers of the white-water rafting trip; that he failed to produce evidence that Laurel breached a duty to rescue him at the earliest opportunity; and that he failed to establish causation as to his claim that Laurel failed to adequately treat his injury.
 
 
 2
 Although the district court erred in ruling that the theory of failure to warn, other than as applied to landowners, does not arise outside of the product liability context, we affirm its decision on the grounds that, as a matter of law, the warnings given to Sanders were adequate and he assumed the risk of undertaking the white-water rafting trip.
 
 
 3
 * Laurel is a corporation engaged in the business of outfitting and guiding customers who wish to raft down rivers and their rapids in the Pennsylvania area. One of the guided white-water tours is on the upper portion of the Youghiogheny River in Western Maryland. This portion of the Youghiogheny is classified, according to an industry guide, as within the most difficult of all categories of river runs, suitable for experts. Armstead, Whitewater Rafting in Eastern North America, (2d ed. 1989).
 
 
 4
 Sanders contracted with Laurel for himself and three of his friends. This trip was not the first Sanders took. On October 24, 1987, Sanders went on a rafting trip with Laurel on the lower Youghiogheny, a run classified as lower in difficulty than the upper Youghiogheny. Prior to the lower Youghiogheny trip, Sanders signed a release of liability which stated in part that he "realiz[ed] I could fall out of the raft or even capsize in rough water (rapids). I realize this could result in serious injury." (Exhibit, Joint Appendix (J.A.) 34). On July 20, 1988, Sanders made the reservation for the upper Youghiogheny trip. Sanders concedes that he received, prior to this trip, a brochure that stated, in relevant part:
 
 
 5
 1)Although we spare no effort to assure you a safe trip, it must be understood that whitewater rafting does include some danger. We can assume no responsibility for personal safety.... We will ask that you sign a liability form. (J.A. 44).
 
 
 6
 2.Experience is a must everyone in your group should have rafted the Cheat [a river classified as lower in difficulty than the upper Youghiogheny] several times at various water levels. (J.A. 40).
 
 
 7
 3.[U]pper Youghiogheny-advanced to expert level. The upper Youghiogheny ... is the ultimate challenge in whitewater rafting.
 
 
 8
 Sanders denies, and we accept for purposes of reviewing this summary judgment, that he heard the oral warnings that Laurel submits it gave about the dangers of white-water rafting in general and the upper Youghiogheny in particular. Laurel asserts that it gave such warnings at the meeting point for participants and the embarkation point at the river. There is no question, however, that Sanders signed a waiver and release card, before both the first trip and the ill-fated one. The card stated, directly above his signature and directly below information he filled out:
 
 
 9
 As a condition of acceptance, I certify that I am an able swimmer, in good health, and understand the sport of whitewater rafting. I further understand the potential hazards of the sport of white-water touring and realize that I could fall out of the raft or even capsize in a raft in rough water (rapids). I realize this could possibly result in serious injury. I relieve and save harmless Laurel Highland River Tours, Inc., their Directors, Officers, Stockholders, Employees and Helpers, of any responsibility for any and all claims of any nature whatsoever.... (J.A. 34).
 
 
 10
 Laurel transported the customers to the drop-off point. At the drop-off point, the customers were given further instructions and outfitted with helmets and life preservers.
 
 
 11
 Early in the trip, Sanders fell out of the raft and claims he was forced to traverse approximately 100 yards of the rapids bodily. He asserts that, prior to his injury, there was an opportunity for him to be safely retrieved, but that the raft guide instructed his companions not to attempt to retrieve him until they got to calmer water. Sanders injured his knee at some point when he struck a rock and claims that he also suffered an open wound on the knee at that time. A Laurel employee rendered first aid which consisted of applying an ice cap and an elastic bandage to the injured area.
 
 
 12
 The next morning, Sanders went to an emergency room where he was treated and told to seek further care closer to home. The emergency room records indicate that he had an abrasion and a fractured knee cap. He later had surgery performed on his knee to repair the fracture. Four days later, Sanders developed a staph infection in the upper thigh.
 
 
 13
 Sanders does not claim that Laurel owed him a duty to prevent him from falling out of the raft. He does assert that Laurel breached a duty to warn him of the dangers of rafting and that Laurel failed to rescue him at the earliest opportunity. His main claim, as the district court perceived it, was that Laurel failed to render proper first aid and this was the cause of his subsequent infection.
 
 
 14
 The parties focused much of their pre-trial efforts on the purported release which Sanders signed prior to the trip. The district court, however, found it unnecessary to consider this issue.
 
 
 15
 First, the district court found that the only basis for the claim that he should have been rescued sooner was Sanders' opinion. The district court ruled that such an opinion concerning when it was safe to get Sanders back into the raft probably required the testimony of an expert, but even if it did not, Sanders' statements were mere "adjectival descriptions" which, under Maryland law, would be insufficient to prove negligence. (Order, J.A. 254). Sanders' second claim for relief was that Laurel's employee was negligent in failing to properly render first aid to him because his wound was not properly cleaned. Here the district court focused on the medical evidence concerning causation, finding that the medical evidence failed to show that the infection was caused by improper first aid.
 
 
 16
 Sanders filed a motion for reconsideration and attached a supplemental affidavit from one of his medical experts in which the expert specifically opined that the lack of first aid was the cause of the subsequent staph infection. Sanders also claimed that the district court failed to consider his "failure to warn claim." This failure to warn claim was based on Laurel's supposed duty to warn Sanders of the extreme danger of the particular section of river they would be traversing.
 
 
 17
 The district court in its order on reconsideration noted that a "failure to warn" theory of recovery, outside of the landowner liability context, was limited in application to product liability cases. In addition, the district court refused to give Sanders a"second bite at the apple" by supplementing the medical expert's affidavit. To do so, the court felt, would substantially diminish the purpose and utility of summary judgment.
 
 
 18
 Sanders appeals on the grounds that: (1) he properly presented a "failure to warn claim"; (2) Laurel was strictly liable as a common carrier; (3) the district court abused its discretion in refusing to permit him to supplement the medical expert's affidavit; (4) the district court erred in finding that the original affidavits were insufficient; and (5) the district court erred in finding that he failed to offer proof from which a reasonable jury could find Laurel negligent in failing to rescue him sooner.
 
 
 19
 Laurel argues on appeal against these assertions. It also contends that it was not liable as a matter of law because Sanders knew of the danger and voluntarily assumed the risk, because Sanders agreed, before his injury, to unconditionally release Laurel from any liability, and because Laurel adequately warned Sanders of the dangers involved.
 
 II
 
 20
 Sanders, a citizen of Alabama, brought this suit in federal court against Laurel, a corporate citizen of Pennsylvania, on the basis of diversity. The parties agreed that the law of the locus, Maryland, applied to the action.
 
 
 21
 Appellate review of the granting of a party's motion for summary judgment is de novo, and the court of appeals uses the same standard as the district court. Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979).
 
 
 22
 Initially, it must be noted that the district court erred in holding that a defendant can have no duty to warn outside of landowner and product liability law. See, e.g., Eisel v. Bd. of Educ. of Montgomery Co., 597 A.2d 447 (Md. 1991) (holding that the failure of a school counselor to inform parents of a student's suicide ideation was grounds for liability of the school); B.N v. K.K., 538 A.2d 1175 (Md. 1988) (holding that the failure of a person to warn his sexual partner that he had genital herpes was grounds for liability for transmission of the disease). A duty to warn does extend beyond product liability or landowner liability cases if a warning is called for as a result of one party's general duty to another.
 
 
 23
 For example, the owner of a horse with a known dangerous propensity must warn a rider of that danger since that is the appropriate way for him to respond to his duty to his customer. See, e.g., Bass v. Quinn Robins Co., 216 P.2d 944 (Idaho 1950). An airline has a duty to warn a passenger of turbulence it knows is likely to occur. Brittain v. Piedmont Aviation, Inc., 120 S.E.2d 72 (N.C. 1961). An airline may have a duty to warn of conditions of flight if it knows they may affect a passenger with a particular sensitivity to those conditions. Paolone v. American Airlines, Inc., 706 F. Supp. 11 (S.D. N.Y. 1989).
 
 
 24
 In Eisel, the court discussed the factors under which a tort duty arises; these factors are: foreseeability and certainty of harm; policy of preventing harm; closeness of connection between conduct and harm; moral blame; burden on defendant; and insurability. 597 A.2d at 452-55. A white-water outfitter who arranges and guides customers on rafting trips owes a general duty of care to its customers. The general duty may require, in some circumstances, that Laurel provide a warning to its patrons. We decline to hold, as the district court effectively does, that Laurel has no duty to warn of the danger of the rafting trip it sells to its customers.
 
 
 25
 In this case, however, the error proved harmless because the warnings given, as a matter of law, were adequate.* The district court based its opinion on the proposition that there was no duty to warn. Because the record is clear and the facts apparent, however, we need not remand for consideration. Cf. Federal Deposit Insur. Corp. v. Jones, 846 F.2d 221 (4th Cir. 1988).
 
 
 26
 There can be no real dispute that Laurel gave Sanders adequate warnings of the hazards of white-water rafting in general and the enhanced hazards of rafting the upper Youghiogheny in particular. Warnings need only be reasonable, they need not be the best possible warnings in the circumstances. Nolan v. Dillon, 276 A.2d 36 (Md. 1971). In this case, Laurel provided several warnings of the general risks and at least one specific warning that Sanders could fall out and be injured. A more specific or adequate warning could not be required.
 
 
 27
 Furthermore, it is uncontestable that Sanders had previously been on a white-water rafting experience and had twice signed release cards that specifically warned of the dangers of falling out, capsizing and injury. Even if Sanders neither heard nor read the many warnings given him, the general danger of white-water rafting is a risk apparent to anyone about to embark on such a trip. See Saenz v. Whitewater Voyages, Inc., 226 Cal. 3d 768, 276 Cal. Rptr. 672 (1st Dist. 1990).
 
 
 28
 Given the obviousness of the general risks involved, the warnings given of the specific risk from which Sanders was injured, and his previous rafting experience, Sanders assumed the risk of his injury. Under Maryland law, participants assume the obvious and apparent risks of engaging in such sports. Nesbitt v. Bethesda Country Club, 314 A.2d 738 (Md. App. 1974). Clearly under Maryland law, if a plaintiff, as here, voluntarily exposes himself to a known danger of which he was warned or otherwise knows of, he has assumed the risk that danger poses. Gibson v. Beaver, 226 A.2d 273 (Md. 1967).
 
 III
 
 29
 With regard to the claims that Laurel failed to rescue Sanders at the earliest opportunity and that it failed to render proper first aid, we have considered the briefs and the arguments of the parties and affirm on the reasoning of the district court. Sanders v. Laurel Highlands River Tours, Inc., No. CA-91-1507-S (D. Md. Nov. 15, 1991). We further find the claim that Laurel was strictly liable as a common carrier to be without merit. Accordingly, the decision of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 The district court correctly noted that the warnings Laurel gave were adequate as a matter of law and that the general dangers of white-water rafting are apparent. However, it assumed for purposes of summary judgment that this was not the case and based its holding on other grounds