fact alone that the amounts were unusual would not be sufficient to sustain the allegation of fraud. From the affidavit, taken altogether, we cannot assume that shipments were made to any other place than to Cortland, or that the shipments were made for any other purpose than for sale. or market. Assuming that the president of defendant drew out large sums of money for his personal use, it would not follow, from that fact alone, that the corporation would be chargeable with fraud. An act in fraud of the corporation would hardly show fraud on the part of the corporation. See Bank v. Wallace, 4 App. Div. 382, 38 N. Y. Supp. 851.

The shipments of goods and the acts of the president are the main circumstances bearing on the alleged fraudulent transfer or secretion of defendant's property. Significance is claimed for the information, imparted to the affiant by one Knickerbocker, engineer, that the president of the company had gone away with a satchel containing the books of the defendant. If, as the affiant was also informed, the president was engaged in consultation with his attorneys with a view of having a receiver appointed, and a suit was pending for a receiver, it is not strange that the president should have the books of the company, and a dishonest intent would not be inferable. The engineer also told the affiant that he was instructed to lock the plant up and keep the keys until called for by the receiver.

To authorize an attachment upon the ground alleged there must be actual or intended fraud. Casola v. Vasquez, 147 N. Y. 258, 41 N. E. 517. If the facts stated are as consistent with an honest intent as they are with a fraudulent one, fraud may not be inferred from them. Bank v. Wallace, supra. The affidavit is, we think, not sufficient to authorize the conclusion that the corporation had assigned or disposed of or secreted any of its property, or was about to do so, with intent to defraud its creditors. It follows that the order appealed from should be reversed.

Order reversed, with $10 costs and disbursements, and motion to vacate attachment granted, with $10 costs. All concur.

---

(18 App. Div. 134.)

### STRUTT v. BROOKLYN & R. B. R. CO.

(Supreme Court, Appellate Division, Second Department. May 21, 1897.)

CONTRIBUTORY NEGLIGENCE—FAILURE TO AVOID DANGER.

    Plaintiff's intestate, while leaving defendant's boat, was injured by tripping on a large rubber hose attached to a hydrant on defendant's wharf. The accident occurred in the daytime, and there was nothing to prevent intestate from seeing the hose. *Held*, that intestate was guilty of contributory negligence.

Appeal from trial term, Kings county.

Action by Emma Strutt, as administratrix of Conrad Strutt, deceased, against the Brooklyn & Rockaway Beach Railroad Company, to recover damages for the death of plaintiff's intestate. From a judgment entered on a verdict in favor of plaintiff for $2,000, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Isaac M. Kapper, for appellant.

James C. Cropsey, for respondent.

CULLEN, J. This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence. The defendant maintained at Rockaway Beach a pier or wharf at which its steamboats landed, and an hotel and music stand upon or adjacent to it. There was a walk or promenade, over 40 feet wide, made of planks, built from the landing place to the railroad station. On the wharf there was a hydrant, from which water was furnished to the defendant's steamboats and those of other parties. Attached to the hydrant was a rubber hose, three or four inches in diameter, through which water was carried to the boats. The accident occurred about 4 o'clock on the afternoon of September 2, 1894. At the time of the accident this hose lay extended on the wharf. There were very few passengers on the boat from which the deceased came. Witnesses state the number as about 15. The deceased, in walking along the wharf, tripped on the rubber hose, and fell, receiving injuries which caused his death. There was evidence tending to show that the deceased had previously met with an injury affecting his health, and which might render him liable to a sudden attack of apoplexy. The question, however, whether the death of the deceased was occasioned by the fall, or by an apoplectic attack, was plainly for the jury, and with that determination we cannot interfere. We are also of opinion that, defendant's ownership of the wharf, hydrant, and hose being conceded, the presumption was that it was responsible for the condition and position of the hose, and that, to relieve itself from that presumption, it was bound to explain how the hose was in that position without the defendant's fault. But, still, we think that the plaintiff's cause of action was not made out.

If we assume that the conduct of the defendant, in suffering the hose to lie extended upon the wharf, was sufficient to authorize the jury to charge it with negligence, of which there may be grave doubt (Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401; O'Reilly v. Railroad Co., 15 App. Div. 79, 44 N. Y. Supp. 264), we think that the plaintiff failed to establish the other element of her cause of action,—the freedom of the deceased from contributory negligence. The hose lay on the wharf in the plain sight of any one who might look in that direction. It was daylight. There was no congregation or crowd of passengers that in any manner interfered with the deceased seeing and observing the condition of the wharf on which he was walking. The nearest persons to him seem to have been some 15 or 20 feet distant. The deceased had unquestionably the right to assume that the wharf was safe and secure, and was not bound to anticipate defects or guard against dangers in it. But in what sense had he the right to assume that it was safe and secure? He had the right to believe that the structure was sound and free from weakness. He was justified in believing that the planks were securely fastened, that they were free from decay, and that they were suffi-

ciently supported; and, acting on that belief, there was no duty imposed upon him to make any examination. But, as to the presence of articles or objects on the wharf, the question is very different. On this wharf were mooring posts and the hydrant itself. It is conceded that as to these the deceased was bound to observe and take notice of them. On wharves and docks are often, if not generally, to be found objects temporarily deposited there; and, as a rule, their presence cannot be considered as rendering those places either unsafe or insecure. I know of few, if any, places where the traveler is justified in proceeding wholly unobservant of his surroundings. As he goes along the highway, he must anticipate the possibility of hydrants, of telegraph and electric light poles, hitching posts, and carriage blocks, and also the fact that the use of the street may be temporarily encroached upon lawfully by an adjacent owner, either in the receipt of goods or in the improvement of his property. As he walks along a wharf, he must look to see what structures are upon it, and what articles are deposited there. It was not necessary that the deceased should pick his steps, but it seems to us clear that, if he had paid any attention whatever to the place where he was walking, he would have discovered the hose, and avoided it, or stepped over it. In failing to do so, he was guilty of contributory negligence. Dubois v. City of Kingston, 102 N. Y. 219, 6 N. E. 273; Weston v. City of Troy, 139 N. Y. 281, 34 N. E. 780; Whalen v. Gaslight Co., 151 N. Y. 70, 45 N. E. 363. If this accident had occurred at night, or where the plaintiff was surrounded by other passengers, so as to render his observation difficult, a very different question would be presented.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event.

GOODRICH, P. J., and BARTLETT and BRADLEY, JJ., concur.

HATCH, J. I concur in the views expressed by Mr. Justice CULLEN in his opinion. I am also of opinion that actionable negligence upon the part of the defendant in this case was not established. There may exist circumstances where leaving a hose of this character stretched across the wharf might constitute negligence; but, under the circumstances of this case, the inference of negligence may not be drawn. I do not understand that any of my associates dissent from this view, but prefer to place the reason for their conclusion upon the ground stated in the opinion.