(75 App. Div. 553.)

### ALBERT v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. November 7, 1902.)

1. LICENSEE—DANGEROUS PLACES—NOTICE TO KEEP OUT.

One who, without enticement, enters upon an evidently unfinished extension of a park, consisting only of a strip of loose dirt, and separated from the finished portion by barricades, with notices warning the public to stay out, posted at either end, and from which the public were excluded by policemen and watchmen, is at best but a licensee; and no recovery can be had against the city when he is injured therein by an accident occasioned by a visible danger.

2. SAME—REASONABLE CARE.

A city contractor, in extending a park, constructed a sea wall to the level of a foot above the incompleted park extension. An iron railing was to guard it, but it was not yet all in position. In an action by the administrator of a 12 year old child, who was killed by falling over the wall, it was proved that there was an iron railing intended to guard the wall, but that it was not yet all in place, and that children had from time to time gone upon the premises. Held, that since the city was not bound to have the rail all in position during the progress of the work, and since the danger was obvious, the city could not be held to have failed to exercise reasonable care in that regard, even though the child be considered as entering there by an implied invitation.

3. SAME—CONTRIBUTORY NEGLIGENCE.

A 12 year old boy, while standing about two feet from an unguarded sea wall, raised about a foot above the level on which he stood, attempted to throw a stone from a sling beyond it, and into the river below. The sling slipped from his hand, and he, jumping to recover it, fell over the wall, and was killed. The boy had been warned by his father to keep away from the premises, and the danger was apparent. Held, that he was guilty of contributory negligence, as a matter of law.

Appeal from trial term, New York county.

Action by George J. Albert, as administrator, against the city of New York and another. From a judgment in favor of plaintiff, the city of New York appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Theodore Connoly, for appellant.

Hieronimus A. Herold, for respondent.

HATCH, J. By this action damages are sought to be recovered against the city of New York and one Gildersleeve, a contractor, for negligence resulting in the death of plaintiff's intestate. Upon the trial the complaint was dismissed as to the contractor, and, as no appeal was taken from that determination by the plaintiff, its correctness cannot be questioned upon this appeal.

By virtue of the provisions of chapter 320 of the Laws of 1887, authority is conferred upon the city of New York to select, locate, and lay out public parks south of 155th street; and by the provisions of section 9 of such act the department of public parks of the said city is vested and charged with the care, custody, and construction of the same after they shall have been acquired, and is authorized and empowered to construct said parks, and to erect and furnish therein for public purposes, and for the comfort, health, and

instruction of the people, buildings, etc., with the concurrence of the board of estimate and apportionment, as shall be determined to be necessary and expedient. Pursuant to the provisions of this act, a contract was made by the said city, acting through the department of public parks, with the defendant Gildersleeve, for the extension of East River Park, and for the work of regulating and grading the same, and for the erection of a sea wall along the easterly front of the extension of East River Park from 86th street to near the northerly line of 89th street. The agreement was entered into between the respective parties thereto on the 20th day of December, 1900, and immediately thereafter Gildersleeve entered upon the performance of the same, and continued to be employed thereon down to the date of the injury complained of in this action, and thereafter. The extension, when completed, was to form a part of the East River Park, which then had an existence, was opened, and used by the public. This extension at the time of the accident consisted of a dirt space about 44 feet wide, and graded about a foot below the sea wall, extending from 86th to 89th street. The completed portion of the park was upon higher ground, and, except for the walks and paths, was covered with grass. A steep bank ran down from the level part of the park to where it joined the extension, and there was a flight of stone steps at about the center of the completed park, leading to the extension. The completed portion was separated from the extension by a fence of three bars, running its whole length, and the approach by the stone steps was barricaded by seats placed in front. In order for a person to get upon the extension from the park, he had to climb over these obstacles. There was also an entrance at each end of the extension from 86th and 89th streets. Signs were placed at these entrances, reading: "Danger. No trespassing allowed on the site of this work. A. C. Gildersleeve, Contractor." By virtue of the specifications attached to the contract, and made a part thereof, the contractor became responsible for the general care, control, and good order in the performance of the work, and was required to keep watchmen on the work night and day, and place proper guards around the same for the prevention of accidents, and at night to put up and keep sufficient lights. The contractor had placed a two-inch pipe against and on the inside of the sea wall, for the purpose of conveying water necessary in the prosecution of the work. The sea wall was two feet and two inches wide, and at the point of the accident was about ten inches above the dirt, and when completed was to be guarded by an iron railing. The latter had been partially placed in position, but did not extend beyond the space where the accident happened. The extension was not opened to the public for any purpose. There was no driving or travel thereon, except by the teams of the contractor engaged in the prosecution of the work. Two watchmen were employed by the contractor, one during the day and the other at night; and these watchmen excluded from the extension, so far as they were able, all persons and children during the whole period of time. There is negative testimony given by the plaintiff's witnesses that they never saw any watchmen upon the premises, and of boys called by the

plaintiff who testified that they were frequently there, and were never driven off; but the testimony is undisputed that watchmen were employed, and exercised their duties in excluding all persons improperly upon the premises. In addition to this, the policemen whose beat extended to that locality also exercised supervision and control over the same, and excluded people therefrom. At the time of the accident the work was in an uncompleted state. The contractor was prosecuting it, and the public were excluded from it. It had not been accepted by the city, and did not, at the time of the accident, form a part of the public park. The deceased, a bright, intelligent boy, of nearly 12 years of age, was playing with other boys on the unfinished extension, and, while standing near to that portion of the sea wall which had no railing upon it, was engaged in throwing stones from a sling into the East river. While standing about two feet from the wall he made an effort to throw a stone, the sling slipped from his hand, and he jumped forward to grab the cord, and either tripped over the water pipe, or, stumbling on the wall, fell over the same, striking upon some rocks below, and received injuries from which he died. The day was one of bright sunshine. The deceased was in the full possession of his faculties, had good eyesight, and was familiar with the place, as he had been there many times before. He had been directed by his father "to keep away from the sea wall; while the men were working any place there was danger. I wanted him to stay away." All of these facts were substantially undisputed, and, measuring the obligation and duty which the city owed to the deceased, and the obligation which rested upon the deceased to exercise care and prudence commensurate with his age, we think that the plaintiff failed to establish a cause of action.

The general rules applicable to this situation are reasonably well settled. If the city was under no obligation to the deceased to make the extension safe, or to keep it in any particular condition, then the deceased is to be regarded as a trespasser, or, at the most, a bare licensee, and the only obligation resting upon the city would be to refrain from any wanton or willful act producing injury. Walsh v. Railroad Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615. It is clear that there was no express invitation upon the part of the city for the deceased to go upon these premises. The invitation must therefore be raised by implication, if it exist at all. Assuming, in view of the fact that children had from time to time gone upon this extension, that the city had notice of such fact, or was chargeable therewith, then the obligation resting upon the city would be the exercise of reasonable care in so far protecting the premises that dangerous obstructions or conditions should not exist, from which injury might result. Collett v. Mayor, etc., 51 App. Div. 394, 64 N. Y. Supp. 693; O'Rourke v. Same, 17 App. Div. 349, 45 N. Y. Supp. 261. Under the circumstances of this case, we are of the opinion that the deceased was a mere trespasser, or, at the most, a licensee, in being upon the premises. The condition was perfectly apparent. Barricades separated the extension from the completed portion of the park; notices at either end informed the public that the park was not opened for purposes of use; watchmen and policemen excluded peo-

ple therefrom; while the condition of the premises themselves clearly indicated to the most casual observation that the place was in process of construction, and was not expected to be used by the general public. Under such conditions, it must have been apparent to the most immature person who was sui juris that the public or individuals disconnected from the work were not expected to go or be thereon; and, under such circumstances, no duty or obligation was imposed upon the city, beyond that which it discharged. McAlpin v. Powell, 70 N. Y. 1261, 26 Am. Rep. 555. There was nothing in the condition from which it could be said that in anything which the city did it enticed or decoyed children to come upon the premises by anything kept or maintained thereon. In this respect the case is essentially weaker than Walsh v. Railroad Co., supra.

Applying the above rule to this case, it is clear that the city was not guilty of any wanton act from which the injury resulted. It took no affirmative action; it concealed nothing; and the dangers of the situation were open, apparent, and visible. There was nothing, therefore, in the situation, upon which the liability of the city could be predicated. If, however, we assume that there was an implied invitation to go upon the premises, then we think that the city did not fail in its obligation of the exercise of reasonable care. It was not bound, at its peril, to have the railing run the whole length of the completed sea wall, in order to relieve it from the obligation of exercising reasonable care. If there had been placed upon every foot of the sea wall notices of danger to be apprehended from going upon it or falling over it, it would not, in the slightest, have added to the open and visible danger created by the situation. The whole surrounding was perfectly plain, and the precaution taken by the city to protect the place was all that a reasonably prudent person could be called upon to exercise. Under such circumstances, no liability attaches, within the rule laid down in the last above cited cases and many others. Clark v. City of Manchester, 62 N. H. 577; Blaisdell v. City of Portland, 39 Me. 113; Beck v. Carter, 68 N. Y. 283, 23 Am. Rep. 175; Roberton v. Mayor, etc., 7 Misc. Rep. 645, 28 N. Y. Supp. 13, affirmed in 149 N. Y. 609, 44 N. E. 1128.

We are also of opinion that the deceased was guilty of contributory negligence, as matter of law. He was concededly sui juris. The danger which confronted him was not only open and apparent, but he had been warned of the same by his father, and directed to stay away. He did not fall over the wall by reason of any hidden obstruction or of any latent defect. When the sling which he was using slipped from his hand, he made a jump to recover it, and by such act precipitated himself over the wall. It was said in Hartfield v. Roper, 21 Wend. 620, 34 Am. Dec. 273, in speaking of an infant of tender years, "When he complains of wrong to himself, the defendant has a right to insist that he should not have been the heedless instrument of his own injury." And this language received the sanction of the court of appeals in Wendell v. Railroad Co., 91 N. Y. 420, and in principle in many other cases. Williams v. Village of Port Leyden, 62 App. Div. 490, 70 N. Y. Supp. 1100; Whalen v. Gaslight Co., 151 N. Y. 70, 45 N. E. 363; Strutt v. Railroad Co., 18 App. Div. 134, 45 N.

Y. Supp. 728; Thompson v. Railway Co., 145 N. Y. 196, 39 N. E. 709. Had the deceased been told immediately prior to the accident that if he got upon the wall, or jumped upon it, he was in danger of falling over upon the rocks below, his knowledge of the dangers which confronted him would not have been increased. The occasion of his injury was a heedless attempt upon his part to recover the sling, and, being such, he clearly contributed to his death. This defeats a recovery.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and INGRAHAM and O'BRIEN, JJ., concur. LAUGHLIN, J., concurs on first ground.