STEINBRENNER v. M. W. FORNEY CO. et al.

(Supreme Court, Appellate Division, Second Department. February 17, 1911.)

1. MUNICIPAL CORPORATIONS (§ 661*)—STREETS—POWER TO CLOSE PENDING IMPROVEMENT.

A city can close a street pending construction work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1432; Dec. Dig. § 661.*]

2. NEGLIGENCE (§ 1*)—ACTS OR OMISSIONS—PERSONAL CONDUCT.

The test of actionable negligence is what reasonably prudent men would have done under the circumstances before the accident.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763; vol. 8, pp. 7729–7731.]

3. MUNICIPAL CORPORATIONS (§ 809*)—TORTS—STREETS—CONSTRUCTION—LIABILITY OF CONTRACTOR.

A street contractor was not negligent toward a pedestrian in failing to guard an open manhole, where barriers and the general surroundings indicated that the street was not open to travel.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1688; Dec. Dig. § 809.*]

4. MUNICIPAL CORPORATIONS (§ 805*)—TORTS—STREETS—DEFECTS PENDING CONSTRUCTION—CONTRIBUTORY NEGLIGENCE.

A pedestrian, injured by falling into an open manhole after dark in a street which was being improved, was guilty of contributory negligence where she knew that the street was closed to traffic and barriers and obstructions indicated dangerous conditions.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1677, 1683; Dec. Dig. § 805.*]

Appeal from Trial Term, Queens County.

Action by Eva Steinbrenner against the M. W. Forney Company and another. From judgments for defendants, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

George F. Hickey (M. P. O'Connor, on the brief), for appellant.
Theodore Lord, for respondent Charles Meads & Co., Inc.

WOODWARD, J. The defendant Charles Meads & Co., Inc., was the general contractor engaged in widening Jayne street in the borough of Queens, converting the street into a public plaza on the Queens side of Blackwell's Island Queensboro Bridge, under the terms and conditions of a contract made with the department of bridges of the city of New York; the M. W. Forney Company being a subcontractor in the construction of certain conduits for the electrical equipment, etc. The plaintiff resided at 117 Raddie street, one

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

block and a half north of Jayne street, which latter street was being widened into the plaza, and Raddie street crossed Jayne street at nearly right angles. On the evening of the 22d day of November, 1908, after dark, the plaintiff with her 13 year old son started to take supper to her husband, who was employed at the Belmont Tunnel, going by way of Raddie street, intending to reach Jackson avenue. The work of changing the width of this street and of constructing the plaza was well known to the plaintiff. She had formerly made use of this way; but, when the buildings were torn down to make room for the increased width of the street, she had taken a different route up to the time in question. On Jayne street as newly constructed, and which included a part of the old street, a street surface railroad had been constructed, and this was, at the time of the accident, resting upon the concrete foundation, projecting above the common level of the way about 15 inches. Raddie street was, at this time, blockaded against teams going onto the plaza, though it is claimed this blockade did not extend to the sidewalk. In reaching the plaza, however, it was necessary for pedestrians to step over a curb, and to step down onto the concrete base about 16 inches below, and beyond this was the line of street railroad above mentioned, which formed a second barrier, calculated at least to call attention to the fact that the way was not clear. Moreover, at this point there was a large pile of crushed stone and sand, and, so far as we can gather from the record, a concrete mixer stood in the direct line of the sidewalk on the right-hand side of the street where the plaintiff was walking, so that it became necessary to pass to the left to get around this obstruction, and, as the plaintiff's son testified:

"I say when we stepped off the right-hand sidewalk of Raddie street, we went sort of cater-corner across Jayne street, into the plaza. There was a concrete mixer that prevented me and my mother from continuing straight on in the same direction that we were coming along the sidewalk. There was nothing at all on the other side."

Passing to the left in the manner described by the plaintiff's son brought them behind the barricade erected across Raddie street in the driveway, and then they came to the surface railroad track, which was 15 or 16 inches higher than the concrete foundation, and which they clambered over, and then the plaintiff stepped off into an open manhole, which had been dug by the defendant M. W. Forney Company, and which it is claimed was left without a barricade or lights. It seems that the plaintiff's son, who was 13 years old, and who commonly accompanied the plaintiff on these errands, had seen the condition of affairs during the same day of the accident, while it was yet light, and it is evident from his description of the scene of the accident that they deliberately walked in behind the barricade which had been constructed across Raddie street for the purpose of closing the way to the plaza, and then clambered over a further obstruction, well calculated to give notice of a dangerous condition, and in the darkness, which was as obvious to them as to any one, stepped into a hole which had been left in the ordinary prosecution of the work. There was an electric street light within 120 feet of the accident, and it ap-

pears to have been light enough so that all of these various obstructions were noticed by the plaintiff's witnesses, and the plaintiff's principal witness on the general conditions surrounding the scene of the accident, after various general statements that Jayne street was being used for travel, finally says, "I don't mean that Jayne street at this point was open for use at the time of the accident," and there is no evidence to the contrary.

The situation presented by the evidence is that Jayne street was being completely remodeled to provide a suitable approach to the Queensboro Bridge. Property had been condemned, houses had been razed, and cellars filled in, and the entire space was being filled with a concrete base on which the superstructure or pavement was to be placed. The line of surface railroad had been constructed on this concrete base and was standing some 15 inches above the common level, awaiting the final pavement. Raddie street, on which the plaintiff approached, was closed to traffic. The sidewalk appears not to have been blocked at this particular point; but the way across was obstructed by materials and the concrete mixer, and beyond was this elevated track of the surface railroad. We may concede that Jayne street, new or old, was a public highway, but it was a closed highway. The public had notice, by the barricades and the general surroundings, that it was not open for traffic. The only way that any one coming south on Raddie street could reach the excavation where this accident occurred was to travel on foot, to disregard the barriers in the driveway, close his eyes to the obstructions of the materials and the machine, pass in behind the driveway barriers, and step down 16 inches from the curb to the concrete base, and then climb over 2 tracks of surface railroad, elevated 15 inches above the common level, and then step off into the darkness on the other side. What reasonable man, looking at the situation before the accident, would have anticipated that any one familiar with the conditions would suffer this accident? What reasonably prudent man, looking at the general scene before the darkness descended, would have anticipated that this plaintiff, or other person familiar with the facts, would enter the plaza in the darkness, climbing down over the curb and then over the street car tracks, and finally fall into this hole? The municipality had a right to close the way temporarily during the work of construction. It concededly was closed to traffic generally, and there was nothing in the situation to invite any one to go where the plaintiff did, except, as her son testifies, the streets which they had usually taken were in good condition, but "this going across the plaza was sort of taking a short-cut."

The test of actionable negligence is what reasonably prudent men would have done under the same circumstances before the accident happened, and we are clearly of the opinion that no man of ordinary prudence would have felt called upon to specially barricade this particular hole, when the entire work was barricaded and cut off from traffic at this point. There was light enough to disclose to every one that the way was not open; that it was obstructed by barriers and by materials; that it was "all rough," to quote the plaintiff's son again;

and to say that it was the duty of the contractors to go over the entire surface of this work, and to indicate by lights or barricades every point of special danger in a situation which was obviously generally dangerous, is to hold a doctrine inconsistent with authority and with common sense. In the very similar case of Albert v. City of New York, 75 App. Div. 553, 78 N. Y. Supp. 355, where the city was engaged in making an extension to one of its parks, the court say:

"If the city was under no obligation to the deceased to make the extension safe or to keep it in any particular condition, then the deceased is to be regarded as a trespasser, or at the most a bare licensee, and the only obligation resting upon the city would be to refrain from any wanton or willful act producing injury. Walsh v. F. R. R. Co., 145 N. Y. 301 [39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615]. * * * Under the circumstances of this case, we are of the opinion that the deceased was a mere trespasser, or at the most a licensee, in being upon the premises. The condition was perfectly apparent. Barricades separated the extension from the completed portions of the park; notices at either end informed the public that the park was not opened for purposes of use; watchmen and policemen excluded people therefrom; while the condition of the premises themselves clearly indicated to the most casual observer that the place was in process of construction, and was not expected to be used by the general public. Under such conditions, it must have been apparent to the most immature person who was sui juris that the public or individuals disconnected from the work were not expected to go or be thereon; and, under such circumstances, no duty or obligation was imposed upon the city beyond that which it discharged."

See Downes v. Elmira Bridge Co., 179 N. Y. 136, 71 N. E. 743.

We are also persuaded that the case is lacking in evidence to support the conclusion that the plaintiff was free from negligence contributing to the accident. She had notice that she was in a dangerous situation; she had climbed up on the railroad tracks and crossed both of them, and then stepped off into the darkness without taking any precautions to determine whether there was a foundation for her feet or not. The situation was one calling for special care, yet there is no evidence that she did anything more than to continue to walk forward into the darkness under circumstances requiring great care. She had no right to assume that this way was free from excavations or obstructions; she had notice that it was not free from obstructions by the fact that she had been obliged to step up fully one foot to reach the top of the railroad tracks; she knew how dark it was; and yet there is nothing in the case to show that she took any more trouble to protect herself than she would have done in following the sidewalk of an unobstructed street.

The judgments appealed from should be affirmed, with costs. All concur.