Civil action to recover damages sustained by plaintiff when he fell down an open elevator shaft in a building being constructed by defendant as general contractor for Belk Brothers Company.
The defendant contracted to construct a five-story addition to the building of Belk Brothers Company in Charlotte, N.C. It let the subcontract for the wall plastering work to D. Draddy who was accountable to the defendant for the result only.
Plaintiff was a salesman for Certain-teed Products Corporation, which sold wall plastering and similar products to dealers and distributors. Plaintiff's employer had stored at Plasterco, Virginia, a quantity of its products, the use of which it intended to discontinue and which it wished to sell before 31 December, 1937. Plaintiff was instructed to attempt to dispose of this material prior to that date. Acting on these instructions *Page 732 
plaintiff induced Wiggins Lumber Company to purchase one car of such material on condition that the plaintiff would first find a purchaser therefor.
In compliance with this agreement plaintiff induced Draddy, the subcontractor, to purchase a carload of material from the Wiggins Lumber Company. He agreed to purchase on plaintiff's assurance as to the quality of the merchandise and on condition that it was up to standard and not defective; that he would receive a discount and that plaintiff would, at the first opportunity, inspect the material as it was being actually used on some project or construction job.
The subcontractor notified the plaintiff that he would be using the material on the morning of 22 February. Accordingly, plaintiff went to the third floor of the building under construction on the morning of 22 February and inspected the application of the plastering for a period of about an hour. He observed the men working and that the material was not satisfactory in that it was setting too fast, which indicated that it was defective and not up to standard. He returned to the building on the same afternoon and made inquiry of the workmen as to the material. He was told in reply that the material was no better. He then asked where the bags of plastering were kept. Having received information that they were kept in the storage room plaintiff went to inspect the bags.
The space used as the storage room was back of the passenger elevator and was the service room into which the freight elevator opened. It was formed by the stairway wall, the back walls and the elevator shaft walls. There was one elevator shaft being constructed for future use and a door thereto opened into the room being used as a storage room. This shaft was being used for the builders' service elevator. There were three windows in the wall to this room.
After plaintiff had entered the room and inspected the bags he started to leave. From then on he has a complete lapse of memory until some time after the accident. He was found at the bottom of the elevator shaft which was being used for the contractor's temporary material elevator.
Plaintiff testified that it was cloudy and was too dark in that section of the building to do any work without artificial light; that there was no artificial light, no guard around the elevator shaft; that he did not see the elevator shaft opening; and that it was so dark in there he could not see a hole in the floor. He testified that the difference in the light condition in the storage room and the other part of the building "was almost the difference between daylight and dark or daylight and dusk, or daylight and dusk at least." He further testified that there was no artificial light, no guard around the elevator shaft; that he did not see *Page 733 
the elevator shaft opening and that it was so dark in there he could not see the hole in the floor.
At the conclusion of all the evidence the defendant renewed its motion to dismiss as of nonsuit first made when plaintiff rested. The motion was allowed and judgment was entered dismissing the action as of nonsuit. Plaintiff excepted and appealed.
Certain pertinent facts appearing on this record require consideration in determining the question here presented.
1. The plaster material plaintiff was inspecting was sold to the subcontractor by the Wiggins Lumber Company and not by plaintiff. Plaintiff testified: "I turned this plaster over to T. J. Wiggins Lumber Company and they paid for it, less this credit, and they in turn sold it to Draddy . . . any credit we gave in this thing was given to the Wiggins Lumber Company, and they paid us. They could have sold the material to whom they wanted to."
2. There was no contract relation between plaintiff and either the defendant or Draddy. If the material proved to be defective Wiggins Lumber Company was required to reimburse the subcontractor. Plaintiff testified: "Mr. Draddy's contract and order was with T. J. Wiggins Lumber Company."
3. Plaintiff's promise to inspect the material as it was being applied on this or some other job was for his and his employer's benefit, to induce Draddy to make the purchase from Wiggins Lumber Company and to thus enable plaintiff's employer to dispose of a stock of doubtful value. "It was understood between Mr. Draddy and myself that I would personally inspect this material at the first opportunity I had. At the first opportunity I had after it arrived on some project or construction job. That is the only place that I could inspect it, at a place where it was being used, and by seeing it myself and talking with the men who used it, and Mr. Draddy, or any plastering contractor." This promise to inspect was one of the inducements the plaintiff offered Draddy to persuade him to change brands and to buy from Wiggins Lumber Company the material plaintiff was seeking to sell to that company.
4. Plaintiff had twice inspected the work and talked with the employees and had ascertained that some of the material was defective before he went to the storage room. He was informed as to the location of the storage room at his request by one of the workers. When the plaintiff visited the building on the morning of 22 February he found *Page 734 
that: "The material was setting too fast, which is an indication of defective material, or not up to standard. It was not working properly on trial. I stayed there about an hour." When he went back that afternoon he found that it was no better. "When they told me that, I asked them where they were keeping the bags of plaster. From what they told me, I found that the bags were back of the stairway toward the old building on the Trade Street side from where they were working. I went . . . to find the bags."
5. Plaintiff had over 17 years of experience in the plastering business during which time he frequently visited buildings in the process of construction, and well knew the conditions to be encountered under such circumstances. Likewise, he saw the "Keep Out" and other warning signs, both on the outside and on the inside of the building.
6. When the plaintiff entered the storage room where the material was kept pending its use, he not only knew that the building was in the process of construction but he likewise knew that the room into which he was entering was dark and without artificial light.
Plaintiff devotes much of his brief to a discussion of the master and servant doctrine of liability, contending that under the facts and circumstances of this case the plaintiff was an employee — if not of the defendant, then of the subcontractor — and that defendant was under obligation to render him the same protection it owed to other employees of Draddy. This position cannot be maintained. In the first place, no such relationship is alleged. On the contrary, plaintiff expressly alleges that he was invited to go and inspect the material as it was in the process of use and application by the subcontractor. Secondly, the evidence does not tend to establish such relationship. As to Draddy, neither he nor his employer was even the vendor of the material. It had been purchased from the dealer on plaintiff's assurance that the dealer and his company, through the dealer, would guarantee the quality and that he would inspect, on this or some other job, while the plastering was being used, to aid in discovering whether it was defective.
The record is devoid of suggestion that the cause was tried on this theory in the court below.
Furthermore, if he was an employee then, as defendant aptly argues, the question as to the applicability of the Workmen's Compensation Act would immediately arise.
Plaintiff was on the premises in the interest of his employer and for his own benefit to make the inspection he had promised as an inducement to Draddy to purchase the material from the Wiggins Lumber Company. His promise was to inspect, at the first opportunity, on some project or construction job. This simply happened to be the first opportunity and the first project where the material was being used. *Page 735 
To constitute one an invitee of the other there must be some mutuality of interest. Crossgrove v. A. C. L. R. R. Co., 118 S.E. 694; Petree v.Davison-Paxon-Stokes Co., 168 S.E. 697. Usually the invitation will be inferred where the visit is of interest or mutual advantage to the parties, while a license will be inferred where the object is the mere pleasure or benefit of the visitor. Bennett v. R. R. Co., 102 U.S. 577,26 L.Ed., 235; John P. Pettijohn Sons v. Basham, 100 S.E. 813.
The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns on the nature of the business that brings him there rather than on the words or acts of the owners which precedes his coming. Permission involves leave and license but it gives no right. In a general sense, one upon the premises of another by invitation is a licensee; but in a strict and somewhat technical sense, to come upon premises under an implied invitation means more than a mere license — means that the visitor is there for a purpose connected with the business in which the occupant is engaged. Pauckner v. Wakem, 231 Ill. 276,83 N.C. 202; Franey v. Union Stock Yard Transit Co., 85 N.C. 750;Albert v. N. Y., 78 N.Y. S., 355.
To entitle one to rely upon an implied invitation to enter, his purpose must be of interest or advantage to the inviter. So if his design is to visit employees (Dixon v. Swift, 98 Me. 207, 56 A. 761; Woodwine v. R.R., 36 W. Va. 329, 15 S.E. 81, 16 L.R.A., 271, 32 Am. St. Rep., 859); or to sell his wares (Norris v. Contracting Co., 206 Mass. 58,91 N.E. 886, 31 L.R.A. [N. S.], 623, 19 Ann. Cas., 424); or to deliver those he has sold (Muench v. Heinemann, 119 Wis. 441,96 N.W. 800); or to solicit employees to take insurance (IndianRefining Co. v. Mobley, 134 Ky. 822, 121 S.W. 657, 24 L.R.A. [N. S.], 497); or to collect debts from them (Berlin Mills v. Croteau, 88 Fed., 860, 32 C.C.A., 126); or in search of his servant (Plummer v.Dill, 156 Mass. 428, 31 N.E. 128, 32 Am. St. Rep.); or to look over the machinery (Benson v. Traction Co., 77 Md. 535, 26 A. 973, 20 L.R.A., 714, 39 Am. St. Rep., 436); or in search of employment (Larmore v. Crown Point Iron Co., 101 N.Y. 391, 4 N.C. 752, 54 Am. St. Rep., 718); he is merely a licensee. Meiers v. Fred Kock Brewery,229 N.Y. 10, 127 N.E. 491.
A licensee is a person who is neither a customer nor a servant nor a trespasser and does not stand in any contractual relation with the owner of the premises (here the contractor in possession) and who is permitted, expressly or impliedly, to go thereon merely for his own interest, convenience or gratification. Crossgrove v. A. C. L. R. R. Co., supra;Petree v. Davison-Paxon-Stokes Co., supra. A license involves the idea of permission on the one side — its acceptance on the other. A licensee is rightfully on the property but this right depends on the licensor's consent — consent that may be revoked at any time. He is doing what *Page 736 
without such consent would be unlawful. The consent carries with it no more than the right to use the property in the condition in which it is found. No greater obligation is implied. A mere consent means no more. Meiers v.Fred Koch Brewery, supra.
So far as the evidence discloses the defendant was under no obligation to permit the plaintiff to have ingress and egress to the building under construction, and it owed him no duty to maintain the building in a safe and suitable condition. It is not contended that there was any express invitation extended by the defendant to the plaintiff to visit the building, nor were there any circumstances shown in the nature of inducement from which such invitation by the defendant should be implied. The purchase of the material by the subcontractor was conditional. It was to be replaced if defective. The plaintiff visited the premises in the interest of his employer in an effort to meet the condition or to ascertain whether the condition thus imposed had been complied with. The inducement he had held out to Draddy to persuade him to use material of doubtful quality was opposed to and not in furtherance of the best interest of the contractor. In no sense was he present by virtue of any enticement, allurement or inducement held out to him by the defendant; nor was his mission of advantage to the defendant, and the plaintiff entered the premises after seeing the "Keep Out" and other signs. The defendant's passive acquiescence, if such be granted, gave plaintiff, as against this defendant, only the right of a licensee.
The owner or person in possession of property is ordinarily under no duty to make or keep property in a safe condition for the use of a licensee or to protect mere licensees from injury due to the condition of the property, or from damages incident to the ordinary uses to which the premises are subject. There is no duty to provide safeguards for licensees even though there are dangerous holes, pitfalls, obstructions or other conditions near to the part of the premises to which the permissive use extends. Neither is the owner or person in charge ordinarily under any duty to give licensees warning of concealed perils, although he might, by the exercise of reasonable care, have discovered the defect or danger which caused the injury. It follows that, as a general rule, the owner or person in charge of property, is not liable for injuries to licensees due to the condition of the property, or as it has been expressed, due to passive negligence or acts of omission. 45 C. J., 799, et seq., sec. 203; Brigmanv. Construction Co., 192 N.C. 791, 49 A.L.R., 773; Money v. Hotel Co.,174 N.C. 508; Briscoe v. Lighting Co., 148 N.C. 396. The duty imposed is to refrain from doing the licensee willful injury and from wantonly and recklessly exposing him to danger. Jones v. R. R., 199 N.C. 1,153 S.E. 637; Brigman v. Construction Co., supra; Adams v. EnkaCorp., 202 N.C. 767, 164 S.E. 367; Dunnevant v. R. R., *Page 737 167 N.C. 232, 83 S.E. 347; Briscoe v. Lighting Co., supra; Blackstonev. Chelmsford Foundry Co., 170 Mass. 321, 49 N.E. 635; Hillman v. BostonElev. Ry., 207 Mass. 478, 93 N.C. 653, 32 L.R.A. (N.S.), 198. The licensee who enters on premises by permission only goes there at his own risk and enjoys the license subject to its concomitant perils. 45 C. J., 798, sec. 203; Cleveland C. C. St. L. Ry. Co. v. Means, 104 N.E. 785, and cases there cited.
Thus it has been held that a workman hired by the lessor of a building to close up windows with brick, who walks in to see the conditions without asking the permission of the tenant and is injured by falling into an open elevator shaft, is, as to the tenant, merely a licensee, if not a trespasser, and the tenant is not liable for the injury (Forsythe v.Shryack-Thom Groc. Co., 283 Mo., 49, 223 S.W. 39, 10 A.L.R., 711); the owner and lessee of premises owe a mere licensee no duty to enclose an open hoistway or elevator well (Marcovitz v. Hergenrether, 302 Ill. 162,134 N.E. 85); and the owner is not liable for injuries received by a licensee on his property due to unguarded or insufficiently guarded elevator shafts (Casey v. Adams, 234 Ill. 384, 84 N.E. 933). TheBashman case, supra, deals with an injury to an employee of a subcontractor and is of interest on the point under discussion.
Even if we concede that there is some evidence of negligence on the part of the defendant, it affirmatively appears that, from an observation of the warning signs, the obvious condition of the building at the time he entered, his long experience in the plastering business and in visiting buildings under construction, the plaintiff was fully aware of the fact that the building was under construction and not in a state of repair; that he entered the storage room at his own request and in furtherance of his own interest; and that he did so knowing that the room was dark and no artificial lighting was provided. He took his chance and lost. Wilson v.Dowtin, 215 N.C. 547, 2 S.E.2d 576, and cases cited.
The judgment below is
Affirmed.