## ROBEY v. KELLER et al.

### No. 4613.

Circuit Court of Appeals, Fourth Circuit.

Oct. 7, 1940.

Before PARKER, SOPER, and DO-BIE, Circuit Judges.

James G. Martin, of Norfolk, Va. (Albert V. Bryan, of Alexandria, Va., on the brief), for appellant.

Armistead L. Boothe and Gardner L. Boothe, both of Alexandria, Va., for appellees.

PARKER, Circuit Judge.

This is an appeal in an action to recover damages for personal injuries sustained as the result of the falling of a defective scaffold. The plaintiff below was Mrs. Gertrude James Robey, who at the time of her injury was a member of the building committee of the Board of Trustees of the Purcellville, Va., public library. The defendants were the contractors engaged in the construction of the library building under contract with the town of Purcellville. At the time of her injury, plaintiff was standing on a scaffold, erected by defendants for the construction of the rock walls of the building, and was examining or pulling at a rock to be used in the walls, when the scaffold collapsed. She alleges that the scaffold was negligently built and maintained and was overloaded with stone at the time. Defendants denied negligence and pleaded contributory negligence on the part of plaintiff. They contended, also, that plaintiff was a mere licensee to whom they owed no duty except to refrain from active negligence or wilful injury. There was verdict and judgment for defendants and plaintiff has appealed. The questions raised by the appeal relate to the charge of the court respecting the duty owed by defendants to plaintiff and to the refusal of the court to charge that there was no evidence of contributory negligence.

For determination of the duty owing by defendants to plaintiff, a correct understanding of her relationship to the library building is essential. There can be no question, upon the evidence, but that she was the moving spirit behind the construction of the building and was so recognized by the town authorities, as well as by the contractors. She it was who secured subscriptions of funds from private persons and a grant from the Federal Public Works Administration which made the building possible. She was present at the letting of the contract for construction and suggested changes which brought the lowest bid within the funds available. She was present when ground was broken for the building and stood over and watched the work as it progressed and saw that mistakes were avoided and satisfactory results obtained. It is true that title to the lot upon which the building was erected was placed in the town of Purcellville and that the contract for its construction was made in the name of the town; but the deed conveying the lot to the town as a site for the library building provided that the management and control of the library should be in a board of trustees named therein, and the evidence leaves no doubt as to the fact that this board of trustees, of which the plaintiff was the active and dominating spirit, undertook the active supervision of building operations usually exercised by the owner or his representative.

An architect was employed by the town, but no inspector; and plaintiff undertook the work of inspection. She was present when the excavation was made for the building, called attention to the fact that it encroached on the sidewalk and had the mistake corrected. She called attention to the necessity of strengthening one of the walls at a certain point and had scrap steel or iron imbedded in the cement for that purpose. She was particularly interested in the artistic effect to be secured by the use of natural stone of the proper colors in the walls, selected the stone to be used and was present when the walls were built, directing how the stone should be placed so as to secure the proper blending of colors. She was at the scene of the work practically every day for several hours a.

day and went upon the scaffolds where the workmen were at work for the purpose of directing and advising them in the placing of the stones. All of this was known to and acquiesced in by defendants, who not only followed her directions with respect to the placing of the stones but sought her advice and approval and directed the workmen to follow her directions with regard thereto. She suggested sundry changes in the work as it proceeded, and procured for the contractors an extension of time for the completion of their contract because of delays resulting from the changes and from weather conditions. No one questioned her authority to thus supervise and direct the work of construction, in which she was assisted by her husband, although one of the defendants did later question her husband's authority. The defendant Lemuel D. Keller testified (p. 395): "Well, ordinarily there is somebody that is designated to be the representative of the owner, and those are the people we deal with. In this case it seems as though the Robeys were just assuming that status there." She evidently felt that the duty of supervision devolved upon her as a member of the building committee of the board of trustees of the library; and the evidence leaves no doubt that she undertook the performance of the duty. The mayor of the town testifies that he told her to do so, and it is clear that the town officials took little interest in the work except to see that no liability was incurred by the town.

At the time of the falling of the scaffold, plaintiff had gone upon it, accompanied by an employee of defendants, to select a stone of a certain color. About a truck load of stone had been placed upon the scaffold, but there was nothing to indicate to plaintiff that it was overloaded, as the amount of stone on it was not in excess of what had frequently been placed upon scaffolds during the progress of the work. A pine put log, which supported the scaffold at a place where there was a recess in the wall and which was about 2½ feet longer than the ordinary supports, broke at a knot and the scaffold fell. There was evidence that the put log was smaller and of less substantial character than should have been used as a scaffold support for this sort of work.

With respect to the duty owing by defendants to plaintiff, the court charged the jury as follows:

"The Court charges the jury that at the time of the accident the plaintiff, under the facts shown in the evidence, was upon the scaffold either as a licensee or invitee as hereinafter defined of the defendants, and that the degree of care which the defendants then owed to the plaintiff depended upon which of said relationships she then occupied. A licensee is a person who goes upon the premises of another with the permission of the occupant for the interest, gratification or pleasure of the person going upon the premises. An invitee is one who goes upon the premises of another in the performance of some duty thereon, or by the express or implied invitation of the person in control. An invitation implies desire or request and must be for the mutual benefit or advantage of both the invitor and invitee. An occupant of premises only owes to the licensee the duty not to intentionally or wantonly injure him, while the duty owed to an invitee by an occupant of premises is to use ordinary care to see that the premises are in a reasonably safe condition for the use of the invitee in the manner and to the extent he is required in the performance of a duty or is invited to use them.

"The Court charges the jury that if they believe from the evidence that the plaintiff at the time of the accident was the duly authorized representative of the Town Council of Purcellville to inspect the library building then being erected by the defendants and that the defendants knew that fact, and if the jury further believes from the evidence that it was reasonably necessary in the performance of such duties that the plaintiff should go upon the said scaffold, then the plaintiff was an invitee of the defendants when she went upon said scaffold. The Court further charges the jury that if they believe from the evidence that at the time of the accident the plaintiff was not the duly authorized representative of the Town Council of Purcellville, but was upon the scaffold which fell pursuant to a general invitation theretofore extended to her by the defendants to come upon the premises and upon the scaffolds to observe and make suggestions as to the progress of the work, then the plaintiff

was an invitee of the defendants to the extent of such invitation.

"On the other hand, if the jury believes from the evidence that at the time of the accident the plaintiff was upon the scaffold which fell for her own pleasure or to gratify her personal interest in the progress of the work then the plaintiff was a mere licensee.

"The Court charges the jury that if they believe the plaintiff was a mere licensee, then even the long continued acquiescence of the defendants in the use of the premises by her for the sole interest, gratification or pleasure of herself did not make her an invitee."

And in connection with this charge, the court refused to give the following instruction requested by plaintiff: "The Court charges the jury that it would not require any written or formal authority to make Mrs. Robey the representative of the town or of the board of trustees of the library, as to the building of the library, if they believe from the evidence that she was in fact authorized as such representative. And if the jury believe from the evidence that Mrs. Robey was in fact such representative, and the defendants saw her acting under circumstances which would reasonably indicate to the defendants that she was such representative, then the defendants owed her the duty of reasonable care in the construction, maintenance and loading of the scaffold."

■ It will be observed that the effect of the court's charge was to tell the jury that the defendants owed to plaintiff the duty to use ordinary care to see that their premises were in reasonably safe condition, only if plaintiff was the duly authorized representative of the town council or if she went upon the premises for the mutual benefit of herself and the defendants; and that, after giving this restricted definition of defendants' duty, he refused to charge that no written or formal authority was necessary to constitute plaintiff a representative of the town or the board of trustees of the library to whom defendants owed the duty of ordinary care. We think that the effect of all this was unduly to restrict the definition of the duty which defendants owed to plaintiff to exercise due care for her safety while on the premises; for we think there can be no question upon the evidence but that she came upon the premises as an invitee and was entitled to the protection of one occupying that status.

■ The difference between the status of a licensee and an invitee arises out of the fact that the former comes on the property for his own benefit or pleasure, whereas the latter comes at the express or implied invitation of the occupant for purposes connected with the business in which the occupant is engaged. "Usually, an invitation will be inferred where the visit is of common interest or mutual advantage to the parties, while a license will be inferred where the object is the mere pleasure or benefit to the visitor". John P. Pettyjohn & Sons v. Basham, 126 Va. 72, 100 S.E. 813, 815, 38 A.L.R. 391; Bennett v. Railroad Co., 102 U.S. 577, 26 L.Ed. 235. The distinction was well stated by the Supreme Court of North Carolina in a recent case, Pafford v. J. A. Jones Construction Co., 217 N.C. 730, 735, 9 S.E.2d 408, 411, where, in an able opinion by Mr. Justice Barnhill, the court said: "The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns *on the nature of the business that brings him there* rather than on the words or acts of the owners which precedes his coming. Permission involves leave and license but it gives no right. In a general sense, one upon the premises of another by invitation is a licensee; but in a strict and somewhat technical sense, to come upon premises under an implied invitation means more than a mere license—*means that the visitor is there for a purpose connected with the business in which the occupant is engaged.* Pauckner v. Wakem, 231 Ill. 276, 83 N.E. 202, 14 L.R.A.,N.S., 1118; Franey v. Union Stock Yard & Transit Co., 235 Ill. 522, 85 N.E. 750; Albert v. New York, 75 App.Div. 553, 78 N.Y.S. 355." (Italics supplied). One who enters upon the premises in the performance of duty occupies the status of an invitee with respect to the duty owed him by the owner or person in charge. 45 C.J. 816, 817 and cases cited.

■ The A.L.I.Restatement of Torts classifies all who are privileged to go on another's property as licensees, and these it divides into two groups which it calls gratuitous licensees and business visitors. A business visitor is defined as "a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indi-

rectly connected with business dealings between them." Par. 332. The liability of the possessor to business visitors is stated in par. 343, in which the duty to exercise reasonable care is set forth in detail, and the reason for the distinction between the measure of duty owing gratuitous licensees and business visitors is thus stated in comment A to par. 343: "The possessor has no financial interest in the entry of a gratuitous licensee; and, therefore, such a licensee is entitled to expect nothing more than an honest disclosure of the dangers which are known to the possessor. On the other hand, the visit of a business visitor is or may be financially beneficial to the possessor. Such a visitor is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions. As stated in sec. 342, a possessor owes to a bare licensee only the duty to exercise reasonable care to disclose to him dangerous defects which are known to him and are likely to be undiscovered by the licensee. Toward the business visitor, the possessor owes the additional duty to exercise reasonable care to make the land safe for the reception of his visitor or, at the least, to ascertain the actual condition of the land so that by warning the visitor thereon, he may give the visitor an opportunity to decide intelligently whether or not to accept the invitation or permission."

Applying these principles, we think there can be no doubt that Mrs. Robey was an invitee within the meaning of the rule as generally stated or a business visitor within the meaning of that language as used in the restatement. She was not upon the property for her own private benefit or pleasure, but for a matter of "common interest or mutual advantage to the parties", i.e., to see that the building, in which she was so greatly interested, was properly built and particularly that the stones were placed in the walls in such way as to secure the proper artistic effect. While she did not own the property, she was on the building committee of the board of trustees and in this capacity shared with the contractors the interest in having the building properly constructed. She was thus upon the property "for a purpose connected with the business in which the occupant was engaged"; and not only did defendants know that she had been coming there for that purpose, but they sanctioned her coming and instructed their employees to follow her directions with respect to the placing of the stones. She was there, too, in the performance of duty. She had taken upon herself the duty of inspection and specifically the duty of selecting the stones for the walls; and, while she may not have been legally appointed by the town or by the trustees to discharge the duty, she was discharging it with the knowledge and consent of the defendants, and it does not lie in their mouths to say that she was not entitled to the care to which an ordinary inspector would have been entitled. The question is not one as to her authority to represent the town or the board of trustees, but as to the duty which defendants owed her when they dealt with her as they would have dealt with a duly appointed inspector and impliedly, if not expressly, invited her to come upon the premises to assist in obtaining a satisfactory result with respect to the walls. Whether or not she occupied the official position of a formally appointed representative of the town, her relationship was that of an invitee present upon the property at the invitation of defendants, for a purpose connected with the business in which they were engaged.

This being the status of plaintiff, the jury might well have been instructed to find that she was an invitee. Such an instruction was not asked, it is true; but the refusal of the one which was asked, taken in connection with the instructions given, deprived plaintiff of the full benefit of the status of an invitee, to which she was unquestionably entitled. After limiting in his definition the circumstances under which plaintiff would be entitled to that status, the court refused to enlarge the definition to the limited extent requested by the prayer. Under the circumstances, this was error; for, whether plaintiff was the authorized representative of the town or the board of trustees or not, no formal or written authority from either was necessary to clothe her with the status of an invitee, and the prayer sufficiently directed the attention of the court to that point. Having assumed responsibility for the inspection of the rock work on the building, plaintiff was engaged in the performance of duty in going upon the premises for that purpose, whether she had any form-

al or written authority from the municipality or the board of trustees or not. If she was in fact inspecting the building for the municipality, or for the board of trustees of the library, and defendants knew that she was coming upon the premises for that purpose and permitted her to do so, they owed her the duty of exercising reasonable care to maintain the premises in safe condition, whether she had been expressly appointed inspector or not, and the jury should have been so instructed. McCormack v. Windsor, 154 A. 765, 9 N.J.Misc. 543.

And we think that they should have been instructed, also, that there was no sufficient evidence of contributory negligence to be considered by the jury. Mrs. Robey had nothing to do with building, maintaining or loading the scaffold. We can see nothing in the evidence to apprise her of the fact that it was overloaded when she went upon it, or that she was guilty of negligence in so doing. The plaintiff prayed an instruction to that effect; and it should have been given. A jury with a deep feeling that "a woman's place is in the home" might have concluded that it was contributory negligence for her to be on the scaffold at all, and a proper charge should have precluded any such notion.

For the reasons stated, the judgment appealed from will be reversed and the cause will be remanded for a new trial.

Reversed.