## ATLANTIC GREYHOUND CORPORATION v. NEWTON.

### No. 4970.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1942.

Samuel W. Ruark, of Raleigh, N. C. (Robert Ruark, of Raleigh, N. C., on the brief), for appellant.

Thomas W. Ruffin, of Raleigh, N. C., for appellee.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

This appeal questions the correctness of the refusal of the District Judge to direct a verdict for the defendant in an action for personal injuries suffered by the plaintiff from a fall on the defendant's premises. The defendant claimed that the plaintiff was injured while on the premises as a mere licensee and that the defendant owed him no duty which had been violated; but the District Judge overruled this contention and found a verdict for the plaintiff in the sum of $7,500.

J. W. Newton was a driver for the Carolina Dry Cleaning Company in Raleigh, North Carolina, and in the performance of his duty called for articles to be cleaned or laundered and returned them to the customers. Amongst the customers was the Atlantic Greyhound Corporation, the defendant in this case, which was engaged in the transportation of passengers by bus and maintained an office and garage in Raleigh. For more than eight years the Cleaning Company periodically cleaned and dyed bus curtains for the Greyhound corporation, and Newton was accustomed to enter the garage in connection with this business. In addition the Cleaning Company laundered two uniforms per week per man for the garage employees, which the employees furnished and caused to be laundered at their own expense; and in order to pick up and return the uniforms, Newton also visited the defendant's premises repeatedly. Entrance was made through the large garage door used by the buses and marked with the words "no admission except on business"; and this was done with the full knowledge and consent of the bus company for, as the company's district manager said, "the men have to have the laundry taken care of".

On Saturday morning, December 7, 1940, in response to a call, Newton went to the garage in order to collect the uniforms to be cleaned. He entered by the large garage door and walked across the floor of the garage and gathered the uniforms to be cleaned from the lockers of the employees, and on his return slipped and fell on his back near the door, and sustained serious injuries from which he subsequently became totally and permanently disabled.

The garage was used to service the buses, and in order to remove the accumulation of oil and grease from the floor it was customary for employees of the bus company to use a substance known as "kerosene gump" which was effective for this purpose, but left the floor slippery and unsafe for walkers, at least temporarily. On the morning in question an employee of the bus company cleaned the floor with this material at or about the time of the plaintiff's visit. Newton saw this man near the door but did not see him do the cleaning. This employee himself testified that although he did not see Newton or the accident, he was using the cleaner on the floor at about the time of Newton's visit. Newton concluded that the slippery substance

was applied to the floor while he was gathering up the uniforms, as he did not see anything on the floor when he entered. Nor did he see the slippery place which caused him to fall as he left, although he looked out for himself as well as he could while encumbered with the large bundle of laundry.

This evidence was submitted by consent to the judge without a jury, and at the conclusion of the testimony a motion for a directed verdict was made by the defendant and overruled by the judge. Answering specific issues, the judge found that the plaintiff was injured by the negligence of the defendant and did not contribute to his own injury, and was therefore entitled to recover.

The defendant confines its argument to the one proposition that under the North Carolina law Newton's status at the time of the injury was that of a permissive licensee to whom the occupant of the premises owed no duty except to abstain from wilful or wanton injury; and since this element was totally lacking in the case, the judge should have absolved the defendant from all liability for the injury sustained.

■ The duty of an owner of land to a licensee under the North Carolina law is stated in Pafford v. J. A. Jones Construction Co., 217 N.C. 730, 736, 9 S.E.2d 408, 412, in the following terms: "As a general rule, the owner or person in charge of property, is not liable for injuries to licensees due to the condition of the property, or as it has been expressed, due to passive negligence or acts of omission. * * * The duty imposed is to refrain from doing the licensee wilfull injury and from wantonly or recklessly exposing him to danger." See also, Restatement of Torts, § 342.

■ We consider first whether the North Carolina decisions require the conclusion that Newton was a "permissive licensee", or to use the terminology of the Restatement, "a gratuitous licensee", when he was injured on the defendant's premises. "To constitute one an invitee of the other", said the Supreme Court of North Carolina in Pafford v. J. A. Jones Construction Co., 217 N.C. 730, 735, 9 S.E.2d 408, 411, "there must be some mutuality of interest. * * * Usually the invitation will be inferred where the visit is of interest or mutual advantage to the parties, while a license will be inferred where

the object is the mere pleasure or benefit of the visitor. * * * The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns on the nature of the business that brings him there rather than on the words or acts of the owners which precedes his coming. Permission involves leave and license but it gives no right. In a general sense, one upon the premises of another by invitation is a licensee; but in a strict and somewhat technical sense, to come upon premises under an implied invitation means more than a mere license— means that the visitor is there for a purpose connected with the business in which the occupant is engaged. * * *" The Restatement distinguishes between a "gratuitous licensee", § 331, and a "business visitor", § 332, and defines a "gratuitous licensee" as any licensee other than a business visitor, and a "business visitor" as "a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."

■ With these definitions before us we have no difficulty in concluding that Newton was an invitee or business visitor rather than a mere permissive licensee. The uniforms which he came to get were obviously used by custom or requirement of the bus company to improve the appearance, serve the comfort and save the clothing of the defendant's employees; and in these matters the defendant had an interest pertaining to its business. In no substantial sense did the plaintiff's activities in relation to the cleaning of the uniforms differ from his services in connection with the cleaning of the curtains. The mere fact that in the contract of employment the cost and care of the uniforms were borne by the employees does not show that Newton's visit was of benefit only to him and the employees of the bus company; on the contrary, it was also to the interest and advantage of the defendant itself. In short, the circumstances indicate that mutuality of interest which characterizes the status of an invitee under the State law. In this connection see Brigman v. Fiske-Carter Construction Co., 192 N.C. 791, 136 S.E. 125, 49 A.L.R. 773.

The defendant relies on a passage in the opinion in Pafford v. J. A. Jones Construction Co., supra, 217 N.C. at page 735, 9 S. E.2d 408, to be found also in Meiers v.

Fred Koch Brewery, 229 N.Y. 10, 127 N.E. 491, wherein illustrations are given of situations in which a visitor is held to be a licensee because his purpose is of no interest or advantage to the owner of the premises, e. g., a visitor whose design is to visit employees of the owner or to solicit them for business. It is our understanding, however, that this passage was inserted by way of illustration and is not to be taken as a binding decision that in North Carolina an employer is never obliged to exercise reasonable care for the safety of one who comes on the premises to visit the employees. Other North Carolina cases cited herein point the other way.

■ But even if it be thought that Newton was merely a licensee, the judgment of the District Court should be sustained, for it is a mistake to suppose that the possessor of land owes no duty to a visitor except to abstain from wilful or wanton injury, when once it is determined that he is a mere licensee. The law, either in North Carolina or elsewhere, is not so simple or so unjust. The North Carolina court, as we have seen, speaks of the freedom of the owner from liability to a licensee for injuries due to the owner's "passive neglects or acts of omission". But there is negligence of another sort that is not free from liability. The Restatement of Torts, § 341, describes the liability of a possessor of land to licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by his failure to carry on his activities with reasonable care; and § 342 speaks of the special liability of a possessor of land to gratuitous licensees for bodily harm caused by a natural or artificial condition thereon when the possessor knows of the conditions and permits persons to enter without exercising reasonable care for their safety, or warning them of the risk involved.

This principle found application in Jones v. Southern R. Co., 199 N.C. 1, 153 S.E. 637, where a railroad company was held liable for injury to a pedestrian for failing to give warning of a change in a pathway across its tracks which for years the company had permitted the public to use. The court held that the general rule governing the liability of a property holder to a permissive licensee is subject to qualification when conditions give the owner reason to anticipate the presence of the licensee. Quoting from Brigman v. Fiske-Carter Construction Co., 192 N.C. 791, 136 S.E. 125, 127, 49 A.L.R. 773, the court said:

"The strict rule exempting the owner of premises from liability to a licensee is ordinarily applied when the negligence of the owner is passive. If the owner, while the licensee is upon the premises in the exercise of due care, is affirmatively and actively negligent in the management of his property or business, as a result of which the licensee is subjected to increased hazard and danger, the owner will be liable for injuries sustained as a result of such active and affirmative negligence."

See also Holcombe v. Buckland, 4 Cir., 130 F.2d 544; Robey v. Keller, 4 Cir., 114 F.2d 790.

■ The bus company well knew that Newton was accustomed to visit the plant every week to procure the uniforms to be washed, and permission to use the bus entrance for this purpose had been expressly given him. The company was aware that the cleanser used by it made the floor slippery and unsafe, and it was proved that the floor had been recently cleaned on the morning of the accident. This evidence justified the inference that Newton's accident was caused by the dangerous condition of the floor at a time when he was attending to his business in the usual fashion and exercising reasonable care for his own safety. There was no error, and the judgment of the District Court must be

Affirmed.